### DENNIS *v.* STATE.

### Opinion delivered December 14, 1908.

1. LARCENY—EVIDENCE.—In a prosecution for larceny where there was evidence tending to prove that defendant stole the property and sold it, receiving a bank check in payment, it was competent to introduce the check, properly identified, to fix the date of the sale. (Page 421.)

2. WITNESS—IMPEACHMENT.—Where defendant was asked on cross examination whether he did not come to see a certain person, and whether when the latter said to him, "I can help you out if you will turn State's evidence," he replied, "I'll see you later," and defendant denied that such conversation took place, it was admissible to prove by the person mentioned that such a conversation took place between himself and defendant. (Page 421.)

Appeal from Jackson Circuit Court; *Joseph W. Phillips,* Special Judge; affirmed.

*Stuckey & Stuckey,* for appellants.

1. There is no proof that the hogs were stolen, nor that they were Harris's hogs—just a suspicion *that they might have been stolen.* A suspicion is not enough to sustain a conviction. 85 Ark. 360. Nor did Harris say that these were his hogs, nor that they were stolen.

2. An *alibi* was clearly shown. The verdict is inconsistent with the evidence—the result of passion or prejudice. 51 Ark. 467; 56 *Id.* 314; 46 *Id.* 149.

3. The check was inadmissible, as no one identified defendant as being connected with it.

*William F. Kirby,* Attorney General, *Daniel Taylor,* Assistant, for appellee.

1. There was evidence to support the verdict. 85 Ark. 360, 39 *Id.* 491, and 68 *Id.* 52 are entirely different cases on the proof.

2. The question of *alibi* was for the jury.

3. There was no prejudice in admitting the check; it made definite the time and place.

4. Finley's testimony was admissible to impeach defendant on cross-examination as to the statements made by him. Kirby's Dig. § 3138.

HART, J. Bud Dennis was convicted of the crime of grand larceny, and has duly prosecuted an appeal to this court. The indictment charged him with stealing one red, white and black spotted gilt, two white and black spotted pigs, and nine spotted hogs, all marked with a crop off of the right ear and a hole in the left ear, the property of A. P. Harris.

Harris testified that he owned hogs of the mark and description mentioned in this indictment. That they ran in the Bayou Bottoms in Poinsett County, near the Jackson line. That the hogs disappeared from their range in March, 1907, and that he does not know what became of them. The place where Dennis lived is not far from where the hogs ranged.

J. G. Handel testified that on Saturday about the last day of March, 1907, he bought some hogs, answering the description of those set out in the indictment. That he did not know Bud Dennis then. That W. B. Chastain informed him that there was a man in town with hogs hunting for him. That he afterwards found the man, bought the hogs, and paid him $80.75 for them, being 4½ cents per pound. That the man said C. W. Sears owned the hogs, but that he wanted the check made to him, R. W. Sears. That he saw the man indorse the check, and identified the check presented to him as being the one. That the signature on the back is R. W. Sears, and that it was made by the man who sold him the hogs. Signatures proved to have been written by Bud Dennis were introduced in evidence before the jury for the purpose of comparison with this signature. That the defend-

ant was a man of much about the same description, but that he can not positively identify him as the man who sold the hogs to him. That the hogs were in a wagon, to which four mules were hitched. The hogs were sold in the town of Newport, Jackson County, Arkansas.

W. B. Chastain testified substantially as follows: I know Bud Dennis. He drove up to my place of business in Newport during the latter part of March, 1907, and inquired for Mr. Handel, a hog buyer. Handel was not there, but came in later, and I told him Dennis was looking for him. Dennis was driving a wagon with four mules hitched to it, which was loaded with hogs when I first saw him. Later in the day, I had occasion to ride down to the stock pen, and saw Dennis drive away from there.

Marcellus Balch testified that he lived about fifteen miles from Newport, and that on the night of the 29th day of March, 1907, he met a wagon going towards Newport with four mules hitched to it. There were two men in the wagon, but he did not recognize them. He did not see any hogs in the wagon, but heard them in it making a noise. Bud Dennis lives in his neighborhood.

Lee Balch testified that the next night, about 11 o'clock, he heard the racket of a wagon and got up. He thinks he recognized the mules as belonging to Frank Curtis and Bud Dennis. There was only one man in the wagon, and he was driving four mules. The driver of the wagon suited Bud Dennis's description, but he could not say whether or not it was he. The moon was shining dimly, and his house was about fifty or sixty feet from the road. The wagon was coming from the direction of Newport, and going towards the Dennis neighborhood.

C. W. Sears, W. R. Sears and W. H. Sears all testified that they lived in the same neighborhood with Bud Dennis. That they did not authorize any one to bring hogs to Newport for them in March, 1907, and they did not know any one by the name of R. W. Sears.

Bud Dennis took the stand in his own behalf. He denied that he was ever in possession of the hogs described in the indictment, and denied that he sold any hogs to Handel in March, 1907. Other evidence was adduced in his behalf which if believed by the jury established an *alibi*.

The principal question raised by appellant is that the evidence is not sufficient to sustain the verdict. His counsel cites the case of *Jones* v. *State*, 85 Ark. 360, to sustain that contention.

There is no similarity between the facts in the Jones case and the present one. In the former Jones had purchased from one Ellison cattle which belonged to Dr. Neice. The court held that there was sufficient testimony to justify a finding, from the conflicting evidence, that Ellison was not authorized by Dr. Neice to trade the cattle to Jones, but not enough to warrant the conclusion that Jones did not receive the cattle in good faith. The court said: "In order to justify appellant's conviction, it is necessary to prove, not only that Ellison had no authority to dispose of the cattle, but also that appellant knew that he had no such authority, and that he received the cattle from Ellison, with the felonious intent to deprive the owner of his property."

In the present case Chastain positively identifies appellant as the person who sold the hogs to Handel, and if the hogs were those of Harris they were stolen; for it is not either claimed or shown by the proof that any one had authority to sell his hogs. Harris's hogs had disappeared from their usual range in the bottoms on the line between Poinsett and Jackson counties. The earmarks, the flesh markings and other parts of the description of the hogs sold tallied with those of Harris. Some one was seen hauling hogs towards Newport, from the direction of the Dennis neighborhood, which was not far from where Harris's hogs ranged on the night before the hogs were sold. The signatures of Dennis and of the man who sold the hogs were before the jury for comparison. The defendant, in addition to denying his guilt, introduced evidence strongly tending to establish an alibi, but the weight of the evidence was a question for the jury.

A careful consideration of the evidence leads us to believe that it is sufficient to sustain the verdct.

Handel identified the check as the one given by him to the person who sold the hogs to him, in payment for them. It was introduced by the State to fix the date of sale, and was competent for that purpose.

Appellant was asked, on cross-examination, if he did not come to see Buck Finley in response to word sent him by Finley, and when Finley said to him, "I can help you out if you will turn

State's evidence," replied, "I'll see you later." Having denied this, Finley was introduced as a witness to show that the conversation had occurred between Dennis and Finley as indicated by the question asked appellant on cross-examination. This was competent to go to the jury for what they might consider it worth as impeaching appellant's testimony.

Finding no prejudicial error in the record, the judgment must be affirmed.