HARRIS (LESTER) *v.* STATE.

Crim. 3802

Opinion delivered June 20, 1932.

*George T. Humphries* and *Oscar E. Ellis,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

HART, C. J. Lester Harris prosecutes this appeal to reverse a judgment of conviction against him for grand larceny.

The principal assignment of error is that the evidence is not legally sufficient to sustain the verdict.

According to the testimony of O. C. Cockrum, at the time of the trial, he lived in the west end of Fulton County; and sometime before this, when he lived in the east end of Baxter County, four hogs were stolen from him. Upon investigation, he found his hogs in a field of Mrs. Harris and identified them by their color, earmarks, and a scar on the right foot of one of them. He instituted a replevin suit for the hogs against Richmond and Lester Harris and obtained possession of them. Several relatives and neighbors testified that they examined the hogs and knew them by their color, flesh marks and general appearance, and that they belonged to the prosecuting witness. Some of the witnesses testified that one of the hogs had been caught in a steel trap, which left a peculiar scar on the right forefoot, by which they were able to identify the hog. They were full-blooded red Duroc hogs, and there were no other hogs of that kind and color in that part of the country.

The evidence on the part of the defendant tended to show that the hogs belonged to his brother, Richmond Harris, who had raised them. He testified that the ear-

mark on the hog with the scar on the right forefoot was his own. He admitted, however, that the hogs were found in the field of his mother, Mrs. Harris, and that he lived in Fulton County, Arkansas.

According to the evidence for the State, the hog had been recently stolen, and that was a fact to be taken into consideration by the jury in determining the guilt or innocence of the defendant.

The prosecuting witness, in addition to the testimony he gave which we quoted above, testified that the hogs ranged from his home in Baxter County, across the line into Fulton County, near where they were found after having been stolen. It would make no difference whether the theft of the hogs occurred in Baxter County or in Fulton County. By the common law, larceny is a crime committed by the movement of the stolen property from one county to another, and the indictment may be had in any county in which the stolen property may be carried. *State* v. *Alexander and Moore,* 118 Ark. 357, 176 S. W. 315.

The evidence for the State tended to show that the hogs were stolen from the prosecuting witness, and soon afterwards they were found at the farm of the defendant's mother, where he lived, in Fulton County, Arkansas, and that one of the hogs was in the defendant's mark.

The evidence for the State, if believed by the jury, was sufficient to warrant a verdict of guilty. *Dennis* v. *State,* 88 Ark. 418, 114 S. W. 926; *Starnes* v. *State,* 128 Ark. 302, 194 S. W. 506; and *Yelvington* v. *State,* 169 Ark. 359, 275 S. W. 701.

Another assignment of error is that the court erred in instructing the jury. We do not deem it necessary to set out the instructions complained of. It is sufficient to say that the court defined larceny within the meaning of § 2490 of Crawford & Moses' Digest. The court also explained to the jury that all persons present aiding and abetting in any felony may be deemed principal offenders and indicted and punished as such. This conforms to § 2311 of Crawford & Moses' Digest; and there was no

error in so instructing the jury, because, under the evidence for the State, the jury might have found that Lester Harris was present, aiding and abetting his brother, Richmond Harris, or that he took the hog with the scar on the right forefoot himself and carried it to his mother's farm with the intention of stealing it. The jury might have believed that there was no reasonable explanation of his story of the stolen property, and that, if it was in his mark, it had been marked after it was taken by him. It is true that he testified that the earmark was his own; but the jury might have believed the prosecuting witness in this particular, who testified that he was familiar with the earmarks, and that one of the hogs was in the earmark of the defendant.

It is next insisted that the court erred in remarks made to the jury while they had the case under consideration. The record shows that, after the jury had been out for sometime considering the case, the court called them back into the courtroom and asked how they stood as to numbers. On being informed that the jury stood eight to four, he related an anecdote which the counsel for the defense construed as meaning that the minority should yield to the majority. The court then expressly told the jury that it did not mean that any juror should yield his honest conviction to the balance of the jury. On the other hand, the court impressed on them the fact that each juror should render a verdict according to his own conviction. The language of the court would remove any possible prejudice which might have resulted from the language first used.

We find no reversible error in the record, and the judgment must therefore be affirmed.