# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

ARKANSAS NATIONAL BANK *v.* JOHNSON.

Opinion delivered January 17, 1916.

1. LARCENY—OBTAINING MONEY THROUGH TRICK OR DEVICE.—Where possession of drafts and money is obtained from the owner, through a trick or device, with the intent, at the time the party receives them, to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the party receiving the property is guilty of larceny.

2. BILLS AND NOTES—FRAUD—CONSIDERATION FOR A BET.—Plaintiff parted with the possession of a draft to persons participating in a fraudulent betting scheme, plaintiff, however, having no knowledge that the transaction was fraudulent; the drafts were endorsed to S., who deposited same in defendant's bank, and checked out the proceeds. *Held*, the draft was good in the hands of anyone who took the same without knowledge of the fraud.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; reversed.

*Rector & Sawyer,* for appellant.

1. The court erred in not granting the peremptory instruction asked by defendant. The principle governing the relationship of Spear and the bank is that of principal and agent. 5 Cyc. 493; 78 Neb. 334; 110 N. W. 1019; 126 Am. St. 604; 102 Mass. 503.

2. One who pays a gambling obligation by check can not recover from the bank * * * even though the bank knows the purpose for which the check was drawn. 154 Ill. App. 74; Elliott on Cont., § 1019.

3. The court erred in giving instruction No. 5. Kirby's Dig., § 3687, etc. It had no place in this case. In 110 Ark. 587, the bank had *actual notice;* in this case the

proceeds were paid to Spear without any notice. No bad faith or gross negligence is shown on the part of the bank; an attempt to hold the proceeds of a stolen draft is a question of good faith. 7 Cyc. 945, cit. 61 Ark. 81. Ch. 73, Kirby's Digest, § 3687, etc., does not permit of the construction given by the court in its charge. Gambling is not larceny. The same rule applicable to a payment of a deposit is applicable to the payment of a draft for collection. 56 Ark. 508. *Actual* notice is necessary. 110 Ark. 587. A mere naked bailee who does no act and has no intent to convert to his own use, or withhold for his own use, and before demand delivers the goods back to the owner, is not guilty of conversion. *Loring* v. *Mulcahy,* 3 Allen 575.

*Martin, Wootton & Martin,* for appellee.

The proof shows conclusively that plaintiff was induced by fraud and deception to part with the check, and that shifted to a subsequent holder the burden of showing that he was a holder for value. 110 Ark. 578; 48 *Id.* 454. The possession of property recently stolen is evidence of guilt. It was for the jury to decide whether the bank had knowledge that the draft was stolen or not. 1 Wigmore on Evidence, § § 302-324, 325. *Rumping* v. *Ark. Nat. Bk.,* 121 Ark. 202.

Reading the instructions as a whole, there is no prejudicial error.

HART, J. Appellee sued appellant and one Ed Spear, alleging that there had been stolen from him certain drafts and a certificate of deposit and money, aggregating the sum of $5,125, and that appellant and Spear received and converted the same to their own use, knowing them to have been stolen.

Appellant answered that it had no knowledge of the drafts having been stolen, and that if it received said drafts and certificate of deposit, it received them from Spear in good faith and without knowledge or notice of any defect in Spear's title, and paid the proceeds over to him before the institution of this action. There was a trial before a jury which resulted in a verdict and judg-

ment in favor of appellee against the appellant bank and Spear. The bank alone has appealed.

Briefly stated, the facts are as follows:

Matt Johnson, a farmer from North Dakota, came to Hot Springs, Arkansas, in December, 1912, for the benefit of his health. A few days after his arrival a stranger, who called himself Anderson, made his acquaintance. Anderson said he was from Minnesota and had just sold a piece of land for $14,000 cash, which was deposited in a bank at Fargo, North Dakota. Anderson cultivated the acquaintance of Johnson, and they went around the city a good deal together. They visited the race track, and while there Anderson told Johnson of seeing a man in Minnesota who had won a large sum of money betting on horse races. A few days after this they went out to the ostrich farm, and while there saw a man standing off to one side counting what seemed to be large sums of money. Anderson called Johnson's attention to this man and told him he was the man he had seen win such a large sum of money in Minnesota. Anderson then accosted the man and told him of seeing him betting on the races in Minnesota. This man at first denied his identity, but subsequently admitted that he was the man. He gave his name as Hamilton and told them he represented some men who won large sums of money on horse races, that the men he represented had inside information so that in each race they knew which horse was going to win, that he traveled around over the country betting large sums of money for these men, and that they always telegraphed him in advance which horse was going to win, so that they never lost anything. They finally went into the pool room which was situated near the ostrich farm and Hamilton apparently placed some bets on two or three races and won. Anderson and Johnson were then persuaded to bet on another race. Johnson finally put up what money he had, a draft for $100 and a deposit slip on the Arkansas National Bank for $130, and he and Anderson also wrote out a check for $10,000 each. Hamilton took the checks and drafts and went into the pool room. In a short time he

came back with a card showing that he had made a bet for them, and the name of the horse he had bet on. A little later he got a telegram saying he had won. Hamilton gave Anderson the betting card and Anderson went into the pool room and presented the card. The man there began to figure out how much they had won, and Anderson said to him, "We have got some drafts and checks here you may as well give back to us in place of that much money." The man then took up the checks and drafts and said, "We do not know whether these papers are any good or not; we are not allowed to accept bets of drafts; I wasn't here when this bet was made, and my assistant had no authority to take this kind of bet; you will have to show me that you have the money represented by your checks." Johnson was with Anderson, and they then went back into another room, where Hamilton was and told him about it. Hamilton asked Johnson how much he thought he could raise on short notice, and Johnson replied about $5,000. Anderson stated that he had $14,000 deposited in a bank at Fargo, North Dakota. Their checks amounted to $20,000, and Johnson's $5,000 and Anderson's $14,000 thus made $19,000. Hamilton agreed to put up the balance. Johnson went to his home in North Dakota and procured a draft for $4,500 and $345 in money. The draft was turned over to Ed Spear for collection. He deposited it in the Arkansas National Bank for collection. The draft was collected by the bank and the proceeds checked out by Spear.

Proof on the part of the appellee tended to show that no money was bet on the horse races, and that the whole transaction was a scheme on the part of Anderson and Hamilton to obtain Johnson's money. Counsel for appellant admit this and also admit that the money obtained by Hamilton and Anderson from Johnson, was, under such circumstances, larceny. It was the theory of appellee that Spear had knowledge of the circumstances under which Anderson and Hamilton obtained the money from Johnson, or, at least, that appellant and Spear were possessed of sufficient information, which, if pursued by a man of

ordinary prudence, would lead to knowledge of the circumstances under which Hamilton and Anderson received the money and drafts from Johnson.

Testimony was adduced by appellee tending to show that the bank had received drafts for a large amount from Spear at different times for collection, under precisely similar circumstances; on the other hand, evidence was adduced by the appellant bank tending to show that it had no knowledge whatever of the circumstances under which Spear received the drafts and certificate of deposit, and that it received them from him for collection in good faith in the ordinary course of business.

The facts in the present case are precisely similar to the facts in the recent case of *Rumping* v. *Arkansas National Bank,* 121 Ark. 202. In that case the court held that the circumstances under which the assignment of the drafts were obtained from Rumping amounted to larceny or to obtaining money under false pretenses. The principle applicable for determining whether or not money obtained under circumstances similar to those in the present case amounts to larceny is well stated in the case of *People* v. *Tomlinson,* 102 Cal. 19, 36 Pac. 506. There the court said:

"Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. If the possession has been obtained by fraud, trick or device, and the owner of it intends to part with his title when he gives up possession, the offense, if any, is obtaining money by false pretenses. But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the offense is larceny." To the same effect see *State* v. *Ryan* (Oregon), 1 L. R. A. (N. S.) 862; *State* v. *Dobbins,* 152 Iowa 632, 132 N. W. 805, 42 L. R. A. (N. S.) 735, and case notes.

(1)   In the instant case, Anderson and Hamilton were confederates. There was not to be a *bona fide* race. They intended to keep the money they received from Johnson. Johnson never intended to part with the title to his money or drafts. Although he voluntarily gave the drafts and money to Hamilton, he did not part with the title to the same. Therefore, Anderson and Hamilton obtained his drafts and money feloniously and were guilty of larceny.

(2)   Counsel for appellant assign as error the action of the court in giving at the instance of appellee instruction No. 5, which is as follows:

"In this State the law provides that all bills or notes given for a bet or wager are void, and if you believe from the evidence that the defendants, or either of them, paid the money collected on the drafts in question to any person under the belief that such person had won them at gambling, such payment would not relieve him of responsibility to plaintiff."

The court erred in giving this instruction. As we have already seen, the drafts and certificate of deposit were received by Hamilton under such circumstances as amounted to larceny. Anderson and Hamilton made use of the bet as a device to secure possession of Johnson's money. The bet was not a real one, but was merely colorable or simulated for the purpose of obtaining possession of Johnson's drafts and money, and was obtained under such circumstances that it was larceny in Hamilton's appropriating it. Therefore, the instruction in question was abstract and had no proper place in the case. The court erred in giving it, and it was so held in the recent case of *Rumping* v. *Arkansas National Bank, supra,* to which reference is made for a more extended discussion of the assignment of error, which we do not deem it necessary to repeat here.

Finally it is insisted with great earnestness by counsel for appellant that it had no knowledge and was not in possession of facts leading to knowledge that the drafts and certificate of deposit in question were received by

Hamilton under circumstances which would amount to larceny, and that on this question, under the ruling of *Rumping* v. *Arkansas National Bank, supra,* the judgment should be reversed and the cause of action against it dismissed.

We expressly refrain from passing upon this question for the reason that the testimony on this branch of the case may be different on a retrial of it, or, it may be that additional testimony may be secured by either party which would turn the scale in his favor.

For the error in giving instruction No. 5, as indicated in the opinion, the judgment will be reversed and the cause remanded for a new trial.