MORGAN *v.* STATE.

Opinion delivered October 19, 1925.

1.  CRIMINAL LAW—CHANGE OF VENUE—TIME FOR APPLICATION.—A petition for change of venue was filed too late where it was not filed until defendant had waived formal arraignment and entered his plea of not guilty, and the impaneling of the jury had progressed to the point where four jurors had been found qualified and been accepted.

2.  CRIMINAL LAW—PREJUDICE—DISCHARGE OF PANEL.—A motion to discharge the regular panel of the jury upon a showing that the members thereof were residents in or near the city of the venue, and that the sentiment therein was hostile toward defendant, was properly denied where the jury was not completed from the regular panel, whereupon the court ordered a special panel to be summoned from outside the city, and it appears that defendant did not exhaust his peremptory challenges in impaneling the jury.

3.  LARCENY, FALSE PRETENSES AND EMBEZZLEMENT DISTINGUISHED.— Where one honestly receives possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement; if the possession has been by fraud, trick or device, and the owner of them intends to part with his title when he gives up possession, the offense, if any, is obtaining property by false pretenses; but where the possession has been obtained through a trick or device, with the intent at the time to convert the same to his own use, and the owner parts merely with the possession, and not with the title, the offense is larceny.

4.  LARCENY—TAKING BY TRICK OR SUBTERFUGE.—Where the manager of an ice company was authorized by the company to deposit the company's funds with a certain stockholder, the latter's failure to repay the money was neither embezzlement nor larceny; but if the manager merely pretended to make a deposit when not authorized to do so, the original taking was unlawful, and the crime was larceny, and not embezzlement.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; reversed.

*R. W. Wilson, R. L. Rogers* and *W. B. Sorrels,* for appellant.

*H. W. Applegate,* Attorney General, and *E. W. Brockman,* for appellee.

SMITH, J.   Appellant was convicted on his trial upon a charge of having embezzled certain money belonging to the Consumers' Ice & Coal Company.

The first error assigned for the reversal of the judgment sentencing him to the penitentiary is the refusal of the court to grant his petition for a change of venue. It appears, however, that this petition was not filed until appellant had waived formal arraignment and entered his plea of not guilty and the impaneling of the jury to try the case had progressed to the point where four jurors had been found qualified and had been accepted both by appellant and the State.   We think the petition was not filed in apt time.

The point decided in the case of *Clarkson* v. *State,* 165 Ark. 459, has no application here.   There the validity of a rule of court was involved which provided that a petition for change of venue would not be entertained by the court unless it were filed within a certain time before the case was called for trial.   We held the rule was invalid as contravening the right to a change of venue, guaranteed alike by the Constitution and the statute.   But in so holding we said: "Under the statute an accused has the right, at any time before the commencement of a trial, to obtain a change of venue by complying with the requirements of the statute."

There must, of necessity, be a time within which the right to apply for a change of venue must be exercised, and beyond which time, if not then exercised, it must be held to have been waived, and that time is, we think, the commencement of the trial.   If not exercised by or before that time, the right must be held to have been waived; and the trial from which this appeal is prosecuted had begun when the petition for change of venue was filed.

It is next assigned as error that the court erred in not discharging the panel of the jury and ordering a new venire upon appellant's motion that this be done. This motion was predicated upon testimony which was offered and heard by the court on the application for

a change of venue. It was developed that all the members of the panel then present resided in or near Pine Bluff, where the trial occurred, and it is insisted that a showing was made that there existed against appellant a sentiment of hostility in that city which would prevent him from obtaining a fair trial. No showing was made or attempted that the regular panel of jurors then present was not regularly selected and summoned. Moreover, it appears that the jury was not completed from among the members of the regular panel, and the court thereafter made an order directing that a special venire of thirty-five jurors should be summoned from outside Pine Bluff. It further appears that defendant did not exhaust the peremptory challenges allowed him by law in impanelling the jury.

Appellant was the principal stockholder in and a director and the president of the Consumers' Ice & Coal Company, a corporation. The undisputed testimony showed that he had possession of $37,000 in money belonging to that company, which he did not pay over on demand. Appellant was engaged in the general brokerage business, which he conducted under the name of S. R. Morgan & Company, and it was the theory of the defense that the ice company's money had been deposited with Morgan, doing business as S. R. Morgan & Company, under an agreement on the part of Morgan to pay to the ice company interest on the daily balances, and that the money admittedly in his hands was a mere loan which he was unable to repay, but which he had on several occasions offered to repay upon condition that the ice company pay an indebtedness alleged to be due by it to the Republic Power & Service Company, a corporation largely owned by Morgan.

It was the theory of the prosecution that Morgan dominated the ice company as well as certain other corporations in which he owned the controlling stock, and that the directors were mere "sign here" men, who did his every bidding, and that there was no necessary or

proper relation between these corporations, yet appellant so related their affairs that he could use each of them to exploit the other.

The theory on which the conviction was asked, and was obtained by the State, is reflected in an instruction, numbered B, which reads as follows: ''Even though you may believe that a resolution was passed by the board of directors of the Consumers' Ice & Coal Company authorizing the loaning of the funds of the company to S. R. Morgan & Company, and that a contract was entered into between the Consumers' Ice & Coal Company and S. R. Morgan & Company in pursuance to this resolution, still, if you believe beyond a reasonable doubt from all the facts and circumstances in this case that said resolution was passed as a subterfuge only to make that appear as legal which otherwise would not be, then the passage of such a resolution, if you believe one was passed, would not be a defense.''

Appellant earnestly insists that the giving of this instruction was error, for the reasons, first, that it is not the law in any case, and, second, there was no testimony to justify giving it in the instant case.

A summary of the testimony will be required to dispose of these assignments of error, and in doing so we give to the testimony tending to support the verdict its highest probative value.

The Consumers' Ice & Coal Company was a prosperous going concern on January 13, 1920, and was paying annually and regularly to its stockholders a dividend of ten per cent. and the stock had a book value of $1.75. On the date mentioned appellant acquired a majority of the stock, and new directors were elected, appellant being one of these, and his brother another, and the other two were appellant's employees and were dominated by him.

The ice company had a large revenue, and carried large daily balances in each of two banks in Pine Bluff. Neither of these banks had allowed the ice company any interest on these balances. McIndoo was installed as

manager after Morgan had obtained control of a majority
of the stock of the ice company, and McIndoo was later
elected a director.   Beginning April 20, 1920, McIndoo
began remitting to S. R. Morgan & Company various sums
of money in the form of checks, and this practice con-
tinued until November 29, 1921, by which time these
remittances aggregated $31,657.45. Another item brought
the total to the approximate sum of $37,000.This item
arose out of the sale of certain treasury stock of the ice
company, which was bought by Morgan, and in payment
of which he gave a draft on a bank which closed its doors
before the draft was presented for payment.  Thereafter
the draft was charged to Morgan both on the books of the
ice company and on the books of Morgan & Company.
The remittances composing these sums appeared on the
books of the ice company, which McIndoo caused to be
entered by the company's bookkeeper.  It is further con-
tended by the State that Morgan appropriated and em-
bezzled certain other assets of the ice company, all of
which, together, totaled $85,000.

The items beyond the $37,000 may be disposed of by
saying that, if the ice company sustained those losses,
there was nothing connected with the losses which would
support the charge of embezzlement.   In fact, the testi-
mony in regard thereto was offered as tending to show
Morgan's unlawful purpose to appropriate the money
which admittedly came to his hands, and we therefore
confine our consideration to the items making up the total
of $37,000, which the indictment alleges Morgan em-
bezzled.

The undisputed testimony shows that it appeared
from the books of both the ice company and S. R. Mor-
gan & Company that the ice company had in the hands
of S. R. Morgan & Company about $37,000, and McIndoo,
who, as we have said, became the manager of the ice
company after Morgan acquired control thereof, testi-
fied as to the times when and the circumstances under
which this money reached the hands of Morgan & Com-

pany, which, as we have also said, was the name under which appellant Morgan conducted a general brokerage business. McIndoo was called as a witness for the State, but it is insisted that he was very friendly to appellant, and was entirely subject to his orders.

McIndoo's testimony was to the effect that at a meeting of the board of directors attention was called to the fact that the ice company carried large daily balances in two banks in Pine Bluff, on which no interest was being received, and Morgan made the proposition that, if the banks would pay no interest, S. R. Morgan & Company would do so, and would pay at the rate of seven per cent. per annum, and it was decided to accept his proposition, and thereafter remittances were made to him until the sum so deposited exceeded $30,000.

McIndoo testified that at a meeting of the board of directors the proposition of depositing the ice company's surplus with S. R. Morgan & Company was considered, and it was then unanimously agreed by the directors that Morgan's proposition should be accepted, but no record of this action was entered on the minutes of the corporation at that time. The deposits were made pursuant to this action. Later, after the minority stockholders had become dissatisfied with the management of the company's affairs, it was decided to embody this action, which had been previously taken, in the form of a resolution, and this was done at a meeting of the board of directors held on the 12th of July, 1921.

If the transactions were what they thus *prima facie* appeared to be, there would be nothing to this case. A charge of embezzlement could not be predicated upon the mere failure to repay loans to Morgan in the form of deposits. But the State insists that these purported deposits were mere subterfuges to conceal the real purpose which Morgan had of appropriating the ice company's money.

The instruction set out above submits that issue. The circumstances which warranted the submission of

that issue, in addition to those stated, are that McIndoo, after stating that the deposits were authorized at a meeting of the board of directors, testified on his cross-examination as follows:

"Q. The verbal contract you are talking about between Morgan and the directors of the Consumers' Ice & Coal Company—was that entered into between the board of directors as such, or as individuals? A. Not by the board of directors. Individuals. Q. Who had that agreement? A. Morgan and Miller and myself talked it over at one time. Q. When was that? A. Early in 1920. Sometime about April or May. Q. You and Morgan and Miller? A. Yes sir; and later on I discussed it with M. B. Morgan, who was later elected a member of the board. Q. There never was any resolution of the board of directors as such authorizing that? A. No sir."

It is insisted on the part of the prosecution that this resolution was never adopted, or, if adopted, that it was a mere subterfuge. In support of this contention, it is insisted other resolutions relating to the management and sale of certain property belonging to the ice company, which were never in fact adopted by the board of directors, were entered in the minute book of the ice company. One of these important meetings was supposed to have been held on the 26th of January, 1922. There was testimony on the part of the State that a receiver took charge of the affairs of the ice company on December 22, 1921. At that time the minute book of the directors' meeting did not extend beyond page 119 and did not show the meeting of January 26, 1922. The receivership was dissolved on January 26, 1922, but on March 4, 1922, a receiver was again appointed, and, when the receiver again took over the management of the ice company's affairs and its records, the minute book then showed the entry of the proceedings of a meeting of the board of directors held January 26, 1922. It was recited in the minutes of this meeting

that it was held at the office of S. R. Morgan & Company at Little Rock at 4 o'clock p. m., which adjourned over at the same place at 8 o'clock, and that Morgan was present and presided at these meetings.    There was testimony from which the jury might have found that Morgan was not in Little Rock at either of those hours, but was in fact in Pine Bluff both hours.

But it is very earnestly insisted by counsel for appellant that, if it be said that the testimony is sufficient to support a finding that the transaction was not in the nature of a loan by way of deposits made, the offense, if anything, was larceny, and not embezzlement.

We have concluded that counsel for appellant are right in this contention.  The transaction was either a loan by way of deposits made, as claimed by appellant, or it was a trick or device, or, to quote from the language of instruction B, set out above, it was a mere subterfuge to make that appear as legal which would not otherwise be so.  In such event the crime committed would be larceny, and not embezzlement.

The crimes of larceny and embezzlement are kindred offenses, and the difference between them is sometimes difficult to distinguish.  But they are different offenses, and different proof is required to sustain one from that required to sustain the other.  Because of this similarity and the consequent contingency that the testimony may show the commission of the one rather than the other, it is provided by statute that a single indictment may charge the commission of both in separate counts, and when the offenses are thus charged in a single indictment the State is not required to elect upon which charge the prosecution will be conducted.  *Hall v. State,* 161 Ark. 453.   The State may go to the jury upon both charges, leaving it to the jury to decide whether there was a wrongful taking or a wrongful conversion, one offense being larceny, the other embezzlement.  The proof of a wrongful taking is essential to support a conviction for larceny, but that proof will not suffice to sustain the

charge of embezzlement, nor will the proof of a wrongful conversion sustain the charge of larceny.

The distinction between these offenses has been pointed out in numerous decisions of this court, one of the latest being that of *Hall* v. *State, supra.* It was there contended that the defendant, who had been indicted for both larceny and embezzlement, had been wrongfully convicted of larceny, when, if guilty of any offense, it was that of embezzlement. We held there, however, that the defendant had come into the possession of the money wrongfully, and that his conversion thereof constituted a wrongful taking, and was therefore larceny; but we there also said: "He was never rightfully in possession of the warrant or the money derived by cashing it, and he was not therefore guilty of embezzlement."

The court below properly charged the jury that, if the money was deposited with Morgan, no offense was committed, for a mere failure to repay a loan cannot be converted into a crime; and if the transaction was not a loan, then the original taking was wrongful—was accomplished by a subterfuge—and the crime was larceny, and not embezzlement.

It is settled law that where one deposits money as with a bank, the title to the money passes to the bank and the relation of debtor and creditor arises between the depositor and the depository. So here, if this money was deposited with Morgan and the transaction was what it appeared to be, a mere loan was made. If the apparent deposit was a mere trick or subterfuge whereby Morgan acquired possession of the money, the original taking was wrongful, and the crime was larceny, and not embezzlement.

In the case of *Arkansas National Bank* v. *Johnson,* 122 Ark. 1, the owner of the property had parted with its possession consciously and purposely, but had been induced to do so through a trick or device, and we said the crime committed was larceny.

The distinction between the crimes of larceny and embezzlement and another kindred offense, that of obtaining money by false pretense, was pointed out in that opinion by a quotation which we there approved from the case of *People* v. *Tomlinson,* 102 Cal. 19, 36 Pac. 506, reading as follows: " 'Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. If the possession has been obtained by fraud, trick or device, and the owner of it intends to part with his title when he gives up possession, the offense, if any, is obtaining money by false pretenses. But where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the offense is larceny.' (Citing cases)."

If McIndoo had the authority to make the remittances to Morgan by way of deposits, the failure to repay would be neither larceny nor embezzlement. If he was a mere confederate, and was pretending to do a thing which was not in fact being done, that is, depositing the money, the original taking was unlawful, and the crime was that of larceny.

We conclude therefore that the testimony in the case does not sustain the charge upon which appellant was convicted and the judgment must therefore be reversed, and the cause remanded for a new trial.