STUBBLEFIELD, BURNS AND GASTON *v.* STATE.

4192                                        146 S. W. 2d 688

Opinion delivered January 6, 1941.

*Woolsey & McKenzie,* for appellants.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HUMPHREYS, J.   Charges of perjury in the first degree were jointly preferred against appellants by the prosecuting attorney of the Fifteenth Judicial District in the Ozark district of the Franklin county circuit court for falsely and fraudulently swearing that Bill Russell, who was on trial in said court for robbery and assault

to kill Sam Miller, at his home one-half mile east of Ozark on the 8th day of February, 1940, was in Paris, Arkansas, at the time of the robbery and assault.

On motion a bill of particulars was filed by the prosecuting attorney against each appellant in which it was stated, in substance, that appellant, Bruce Stubblefield, falsely and fraudulently testified that Bill Russell came to his home in Paris, Arkansas, the early part of February, 1940, and shaved, and that they then walked down town together; that appellant, Carl Burns, falsely and fraudulently testified that Bill Russell stayed all night at his home in Paris, Arkansas, the first week in February, 1940; and that Joe Gaston fraudulently and falsely testified that Bill Russell took dinner at his home in Paris, Arkansas, between the first and fifteenth of February, 1940.

The appellants pleaded not guilty to the charges and upon a trial thereof the jury returned separate verdicts finding them guilty of perjury in the second degree and assessed their fines at $50 each, upon which judgments were rendered.

Motions for new trials were filed and overruled and appeals have been duly prosecuted to this court from said verdicts and judgments.

The first assignment of error argued for reversal of the verdicts and judgments is that the evidence set out at length in the bill of exceptions is not sufficient to sustain convictions for perjury.

Appellants moved for instructed verdicts of not guilty at the conclusion of the state's evidence and again at the conclusion of all the evidence which motions were denied over their objections and exceptions, and it is argued that the evidence is so indefinite and uncertain that it cannot be said that there is any substantial evidence in the record to support verdicts for perjury.

In order to sustain convictions for perjury the old rule was that the testimony of two witnesses was required. Now a conviction of perjury may be sustained by one witness supported by proof of corroborating cir-

cumstances. This court said in the case of *Lamb* v. *State*, 135 Ark. 275, 205 S. W. 653, that: "The old rule that to convict of perjury, two witnesses are necessary has been relaxed; and a conviction may be had upon any legal evidence of a nature and amount sufficient to outweigh that upon which perjury is assigned. In other words, it is now well settled in this state that such a conviction may be had on the evidence of one witness supported by proof of corroborating circumstances. Of course, the corroborating evidence must go to material testimony adduced by the state, and not to testimony on some immaterial matter. *Marvin* v. *State*, 53 Ark. 395, 14 S. W. 87, and *Grissom* v. *State*, 88 Ark. 115, 113 S. W. 1011.''

Keeping this rule in mind as well as the rule that the evidence must be viewed in the most favorable light to appellee, the record reflects that when Bill Russell was on trial for robbery and assault, he testified in his own behalf that on the 8th day of February, 1940, he was in Paris, Arkansas; that he went down to appellant's, Stubblefield's, home where he shaved and ate supper; that he then went to the home of appellant, Carl Burns, and stayed all night, and that on the following Sunday he went to appellant Gaston's home and ate dinner with him, and then got a ride to Little Rock and went from there to Texarkana and on out to Oregon looking for work.

Barney Payne, who was jointly indicted with Bill Russell for assaulting and robbing Sam Miller and pleaded guilty thereto, testified that he and Russell were in Ozark on February 8, 1940, and on that night assaulted and robbed Miller who lived one-half mile east of Ozark, and that after the commission of the crime they went to Hot Springs and spent the remainder of the night; that the next day they went to Kirby where they separated and he did not see Russell any more until Russell was put on trial.

Sam Miller testified that he was assaulted and robbed at his home one-half mile east of Ozark on the night of February 8, 1940.

Appellants admit that the assault and robbery occurred on February 8, 1940.

The state then introduced the transcript of the testimony of each of the appellants at the trial of Bill Russell which, in substance, is as follows: Bruce Stubblefield testified that he saw Bill Russell some time in the early part of February at his house at Paris; that Russell came to the witness' house to shave, and that he and witness walked down town together; that the first time he saw him was on Friday and then saw him again on Sunday; that he got some money at the Flickering office and lent it to Bill Russell.

Carl Burns testified that he knew Bill Russell, and that Bill Russell stayed all night at his house during the first part of February; that he couldn't tell which particular day it was, but that it was the last part of the week.

Joe Gaston testified that Bill Russell took dinner with him some time between the first and fifteenth of February on Sunday.

The sheriff and his deputy testified that they were unable to find Bill Russell in Paris after the robbery and the state introduced some testimony from witnesses brought from Pike county to corroborate the testimony of Barney Payne about the movements of Bill Russell immediately prior to and immediately after the robbery of Miller.

It is true that the testimony of the appellants was indefinite and uncertain as to the exact date they saw and met Bill Russell in Paris, Arkansas, but all of them put it during the first week of February, and they testified to facts and circumstances with reference to shaving, spending the night and taking dinner which fully corroborated Bill Russell in his statement to the effect that he was in Paris, Arkansas, on February 8, 1940. In other words their testimony corroborated the testimony of Bill Russell as to the alibi he was attempting to establish in defense of the crime he was charged with and being tried for. Their testimony

described the same circumstances detailed by Bill Russell in his testimony as to his movements and what he claimed to have done in Paris on the 8th day of February, 1940.

The testimony of Barney Payne was positive and direct that he and Bill Russell were not in Paris on the 8th day of February, 1940, and he was corroborated by the testimony of the sheriff and other officers who made a search for Bill Russell immediately after the robbery and certain witnesses appearing in the record who came from Pike county and corroborated the testimony of Barney Payne about the movements of Bill Russell immediately prior to and immediately after the robbery of Miller.

We think this testimony without going into the details thereof meets the rule that conviction for perjury may be had on the evidence of one witness supported by proof of corroborating circumstances and the other well known rule that verdicts will not be set aside by this court if sustained by substantial evidence. The trial court correctly overruled the motion to instruct a verdict for appellants.

Appellants next assignment of error argued for a reversal of the verdicts and judgments is that the court refused to permit him to pursue the cross-examination of Nola Cox, a witness for appellee, and in remarking to the attorney that he was carrying his inquiry in an insinuating way relative to Nola Cox's private character. She had been interrogated and testified to what she knew concerning the whereabouts of Bill Russell before and after the robbery and had stated that she and her husband were not living together whereupon the attorney for appellants asked:

"Q. Do you go with any other men? A. No, sir, I have no use for them. Q. You don't keep any company with any of them? The Court: You are going too far into that, Mr. Woolsey, you are entitled to learn what this witness knows about this case. Mr. Woolsey: I object to the remarks of the court as this witness is an entire stranger to me, and I am trying to find out who she is. The Court: I have permitted you to do

that, Mr. Woolsey, but the manner in which you are interrogating this woman who is the mother of five children in the manner, insinuating manner, that is not treating the witness right. Mr. Woolsey: I object to the statement of the Court that I am interrogating this witness in an insinuating manner."

We are unable to say that the court abused its discretion in refusing to permit appellants' attorney from inquiring further into the private life of Nola Cox. She had answered that she did not go with other men and had no use for them, and the court, in its discretion, seemed to think the manner of the questioning was insinuating, and for that reason required the attorney for appellants to confine his questions to matters relative to the whereabouts of Bill Russell and not interrogate her further relative to her private life. There must be some limit to the extent and scope of an inquiry into the private life of a witness, and we do not think the court's action in the matter or what he said in any way prejudiced the appellants.

Appellants also assign as error the ruling of the court on account of the closing argument of the prosecuting attorney. The prosecuting attorney made a statement in his closing argument with reference to some letters which a witness by the name of Ralph Walker was to produce in order to fix the date Bill Russell had obtained some money from the witness in Paris, Arkansas. When the matter arose in the course of the trial the court made the following statement:

"The Court recalls that when Mr. Woolsey was examining the witness, Walker, Walker stated that he recalled the date of this occurrence of Russell obtaining some money from Walker and keeping it, by the fact that he had written his brother in Arizona of the incident, and from other letters that his brother had received from home, and that later his brother came home and brought the letters there, and that he refreshed himself as to the date at that time and Mr. Woolsey asked if he had the letters with him, and he said he didn't; that they were at home at Paris; then Mr. Woolsey requested him

to go get the letters, and when the witness was excused from the stand and some time later during the trial the witness called my attention that he was back with the letter or letters, and this witness' testimony was referred to in the argument of Woolsey; then was answered by Mr. Robinson the prosecuting attorney.

"Mr. Woolsey: I didn't mention Ralph Walker in my argument. I never mentioned a thing about the letters. The Court: You referred to the fact of his taking some money from Walker. Mr. Woolsey: I never mentioned Walker. The Court: Motion overruled. Mr. Woolsey: Save our exceptions."

It seems that after the court made the statement he did as to what had been said and done relative to the letters and their introduction or failure to introduce them was pursued no further, in other words, the statement of the court was accepted as the true facts in the matter. They did not take issue with the court, else they would have furnished a bystander's bill of exceptions correcting the record which was made by the court. We, therefore, accept the statement of the court as to what was said and done at the time and cannot see from the statement that the court exercised an arbitrary discretion in permitting the prosecuting attorney to make the kind of argument he did in closing his case. This court said in the case of *Hall* v. *State,* 161 Ark. 453, 257 S. W. 61, that: "This court has always held that a wide range must be given to the arguments of counsel and much discretion must be left to the court."

Lastly it is argued that the court erred in admitting the testimony of Bill Russell after the submission of the case to the jury and for the further reason that appellants had no opportunity to cross-examine Bill Russell at the time of his trial.

The court overruled the motion of appellants to exclude this testimony upon the ground that the appellants' attorneys and the prosecuting attorney had entered into an agreement in his presence that the testimony of Bill Russell in his own behalf when he was tried for robbery and assault might be transcribed and used by either party

in the trial of the cause. The statement of the trial court was not controverted and it must be accepted as true. Being true it did not lie in the mouth of appellants to object to the introduction of the testimony as transcribed either before or after it was submitted to the jury.

No error appearing, the verdicts and judgments are affirmed.