HEATH *v.* STATE.

4354                                                   181 S. W. 2d 231

Opinion delivered June 12, 1944.

*Ned A. Stewart,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

KNOX, J.   From a judgment entered in conformity with a verdict finding him guilty of embezzlement appellant prosecutes this appeal.

The evidence, when we view it, as we must, in the light most favorable to the state, discloses that the prosecuting witness, Jim Powell, and his wife, reside, and at all times mentioned have resided, in Lafayette county, about eight miles north of Lewisville. In January, 1942, appellant came to their home, and represented himself to be a wealthy oil man from Texas, who owned interests in several wells, a refinery and, also, owned a large place on the Gulf Coast. Declaring that he was attempting to secure oil and gas leases covering lands in the vicinity for the purpose of drilling a well in search of oil and gas, he urged Mr. and Mrs. Powell to rent him a

room so he would be situated near the scene of his activities. They at first refused, but after much persuasion finally admitted appellant to their home. The prosecuting witness and his wife are devout Christians. Appellant by his words and conduct assumed the role of a devout Christian also. Mr. Powell testified that appellant's attitude and protestations of faith were such as to induce him to believe that appellant "was as good a man as (he Powell) was ever around," and that he thereby fully gained Powell's confidence.

Appellant and his wife lived in the Powell home nearly two months. Almost every week end appellant would make a trip to Texas. Appellant advised Powell that he had received advance confidential information indicating that certain wells then being drilled in Texas would likely be producers of oil. Appellant explained to Powell that such information made it possible for him to, and that in repayment of favors shown him by Powell he would, if Powell so desired, take some of Powell's money to Texas and purchase in Powell's name and for his account royalty interests in land located near these wells, and that later when the probability of production in these wells had become generally known he would assist Powell to sell this royalty at a substantial profit. After talking the matter over with his wife, Powell decided to avail himself of the services, knowledge and experience of his newfound friend, and take a flier in Texas royalty to the extent of $2,000. He tendered appellant a check in this amount, but appellant insisted upon cash, thereupon, Mr. and Mrs. Powell drove into Lewisville and appellant followed in his car. Both cars were parked in front of the bank. Mr. Powell went in alone and withdrew $2,000 from his account, came outside and delivered it to appellant in Mrs. Powell's presence. Thereupon, appellant made and signed a promissory note on a printed form which he had with him in the principal sum of $2,000, bearing interest at 8%, due 60 days from date, and delivered the same to Powell. Powell says that he had requested no such instrument, but that appellant "just volunteered to write out a paper, claiming there

were so many accidents, and a fellow never knew what would happen, and he fixed the paper so if anything happened while he was gone, we could take it into the bank and collect the money, if he got killed or anything happened." Both Powell and his wife deny that the transaction was a loan, appellant on the other hand insists that he borrowed the money and that all parties understood that it was a loan of money—and that the relation between him and Powell·was that of debtor and creditor.

Appellant went to Texas. When he returned he told Mr. and Mrs. Powell that he had procured the royalty, and that as soon as he got everything straight he would take them to Texas where they would sell enough to get their money back and hold the rest. From time to time thereafter, upon returning from various trips to Texas, appellant explained that the royalty deals had been held up because of delay in getting the abstracts of title.

Appellant admits that he obtained $2,000 from Powell, but he insists that the transaction was a loan; he testified that he agreed to pay Powell interest at the rate of 8% per annum, and also give him a $100 bonus for the loan of the money for a period of sixty days. He testified that at the time he obtained the money he intended to invest it in Texas royalty—not for Powell but for himself—that he had previously told Powell that such was his intention; that upon obtaining the money he went to Texas, but did not buy royalty, because the well being drilled by Shell Petroleum Company, in the vicinity in which he had expected to buy royalty had begun to look unfavorable as a potential producer of oil; that he invested $700 in oil leases, and paid personal debts with the remaining $1,300.

At the close of the state's case, appellant moved for a directed verdict of not guilty because (1) "the state has failed to prove venue in Lafayette county"; (2) "the state has failed to prove that the defendant took the property with the intention to embezzle same" and (3)

"Jesse Powell accepted from the defendant a promissory note for $2,000, the money involved herein."

The motion was overruled and exceptions saved. At the close of the whole case the motion was renewed, again overruled and exceptions saved. The action of the court in overruling the motion for a verdict of acquittal is the sole ground relied on for reversal here.

We prefer to discuss the three reasons urged in support of the motion for a directed verdict in inverse order to the way they are set out in the motion.

The third reason presented in the motion is that "Powell accepted from the defendant a promissory note for $2,000, for the money involved herein."

As was said in *Morgan* v. *State,* 169 Ark. 579, 275 S. W. 918: "A charge of embezzlement could not be predicated upon the mere failure to repay loans"—so if the transaction between Powell and appellant amounted merely to a loan of money, and created between them a relation of debtor and creditor, the appellant could not be guilty of embezzlement. The fact that appellant executed and delivered a note, and Powell accepted the same, is evidence that the transaction was in fact a loan—but it is not conclusive evidence of that fact. Evidence was offered by the state relative to the circumstances surrounding the making and delivery of such instrument, from which the jury could have found that no loan was made by Powell to appellant. The issue, therefore, was, and properly should have been, submitted to the jury, and the court did not err in denying appellant's motion for a directed verdict on this ground.

The second reason assigned by appellant in support of his motion for a directed verdict is "that the state has failed to prove that the defendant took the property with the intention to embezzle same."

It is essential to the crime of embezzlement that there be a fraudulent intent on the part of a fiduciary to convert the property of another to his own use. *Kent* v. *State,* 143 Ark. 439, 220 S. W. 814; but where there

has been a wrongful conversion of a fund criminal intent to embezzle may be inferred from the act itself. *Gurley v. State,* 157 Ark. 413, 248 S. W. 902.

Although the second ground relied on to support the motion for a directed verdict is specifically defined therein by the language above quoted, appellant now on appeal undertakes to change, vary, or add to this ground of objection by contending that a verdict should have been directed because the state failed to prove that appellant conceived the intention to convert the money after he came into the lawful possession thereof.

Counsel for appellant argue that even where other necessary elements of the crime of embezzlement are present, yet if at the time the money is received there is already fixed in the mind of the fiduciary the intention to convert the same to his own use, he is guilty of larceny and not embezzlement, and cite as authority *Ark. Nat'l Bank v. Johnson,* 122 Ark. 1, 182 S. W. 533; *Hall v. State,* 161 Ark. 453, 257 S. W. 61; *Morgan v. State,* 169 Ark. 579, 275 S. W. 918.

As previously pointed out, this specific question was not presented to the trial court. Appellant's motion was based upon the general ground that no intention to embezzle was shown—and not upon the ground that the evidence failed to show that such intention was conceived after possession of the money was obtained.

It is well settled that this court will not pass upon a question which was not presented to the trial court. In the case of *Larman v. State,* 171 Ark. 1188, 286 S. W. 933, the trial court admitted certain evidence over an objection based on the sole ground that it was incompetent because it was proof of a different offense. On appeal it developed that the testimony was subject to the objection that it violated the rule against hearsay. Because this latter objection had not been presented to the trial court this court declined to consider it.

Appellant here having founded his motion in the trial court upon the ground that the state had failed to

prove intention to convert, will not now be heard to say that the motion should have been granted because the state had failed to show that the intention to convert came to him after he came into possession of the money.

In the case of *Compton* v. *State*, 102 Ark. 213, 143 S. W. 897, a school director drew and cashed a warrant for a sum in excess of a fee due an attorney for the district, paid the attorney his fee and converted the remainder to his own use. The director was indicted, tried, and convicted of embezzlement. One of the defenses offered was that he could not be held guilty of embezzlement since he had not come into possession of the money rightfully. In disposing of this argument, Mr. Justice HART, speaking for the court, said: "They strongly insist, however, that because the defendant acquired possession of the excess, which he converted to his own use contrary to his duties in the matter, he did not receive it *bona fide* and is not guilty of embezzlement. As said by Mr. Bishop, why should not the rule of estoppel, known throughout the entire civil department of our jurisprudence, apply equally in the criminal? If it is applied here, then it settles the question; for by it when a man has received a thing of another by virtue of his fiduciary relation to him he can not turn around and deny that he received it in that capacity. 1 Bishop's New Criminal Law (8 ed.), § 364. The defendant here received the money of the school district by virtue of his relation of trust and confidence to the members of the school board, and the money was received wholly and exclusively for the benefit of the school district. That is to say, it was received by him for the sole and express purpose of paying a debt of the school district, and he can not take advantage of his own wrong to escape the penalties of the statute by saying that he was not a bailee of the excess for the reason that he received it by virtue of his own wrongful act."

By the same process of reasoning it may well be said in the case at bar that appellant, having obtained possession of this money by means of representations made by him to Powell that he intended to invest it in Powell's

name and for his account and benefit, will not now be heard to say that he had no such intention, but on the contrary had already formed the intention to convert it to his own use. In any event the jury were entitled to consider the statements made by him at and before the time he obtained possession of the money as evidence of his intentions, and he cannot complain if from those statements they reached the conclusion that he conceived the intention to steal only after he came into possession of a sum of money so large that it created a temptation beyond his power to resist. Even if the motion had assigned as a reason or ground in support thereof the lack of evidence to show that the intent to convert followed obtaining possession of the money, the motion would have been without merit in such regard.

The remaining ground offered by appellant in support of his motion is that the state failed to prove venue in Lafayette county. The argument is that there is no evidence that appellant formed the intention to convert, or that he actually converted this money in Lafayette county, Arkansas.

Venue may be established by circumstantial evidence, and the proof is sufficient if from all the circumstances it may be fairly inferred that the crime was committed in the county charged in the indictment. *Walker v. State,* 182 Ark. 45, 30 S. W. 2d 819; *Harris v. State,* 186 Ark. 6, 52 S. W. 2d 632; *Farr v. State,* 99 Ark. 134, 137 S. W. 563.

In the early case of *Wallis v. State,* 54 Ark. 611, 16 S. W. 821, it was held that locality of the crime of embezzlement was sufficiently proved by evidence that defendant resided and collected the money in the county of the venue, and that when last seen it was in his custody in that county.

Under the provisions of § 26 of Initiated Act No. 3 of 1936 there is a presumption that the offense was committed within the jurisdiction of the court, "unless the evidence affirmatively shows otherwise." 1937 Acts, p. 1395.

Whether the crime was committed in Lafayette county was under the facts and circumstances disclosed by this record a jury question—especially so because of the provisions of Initiated Act No. 3 aforesaid. The court did not err, therefore, in refusing to direct a verdict because of lack of sufficient proof to establish venue.

Finding no error, the judgment is affirmed.

McFADDIN, J., disqualified and not participating.