NOVEMBER TERM, 1917. 523

*91 N. J. L.*    Downs v. N. J. Fidelity & Plate Glass Ins. Co.

FANNIE B. DOWNS, RESPONDENT, v. NEW JERSEY
FIDELITY AND PLATE GLASS INSURANCE COMPANY
OF NEWARK, N. J., APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

The plaintiff was insured by defendant against direct loss by burglary.
theft or larceny of property described in a schedule annexed to a
certain policy and insured thereunder. A breaking and entering
occurred while the plaintiff's house was closed in the summer-
time, and certain goods were taken from their depositories and
out of the packages containing them. and distributed through-
out the room where they were contained; and various garments,
thus exposed, were eaten by moths and damaged. *Held*, that this
damage was not directly, but only indirectly and consequentially,
due to burglary, theft or larceny, and that, consequently, plaint-
iff was not entitled to recover for those damages under the policy.

On appeal from the Supreme Court.

For the appellant, *Henry G. Pilch.*

For the respondent, *McCarter & English* and *Walter G.
Bunnell* (of the New York bar).

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was an action upon a policy
of burglary insurance which, by its terms, insured the plaint-
iff for direct loss by burglary, theft or larceny of any of the
property of the assured, described in a certain schedule, and
stated therein to be insured thereunder. The articles de-
scribed in the schedule, among others, were wearing apparel,
furs, rugs, tapestries, &c.

A breaking and entering occurred during the summer of
1915. The plaintiff's house was closed during the latter part
of June, and the crime was discovered on August 31st of that
year. It had evidently occurred some weeks before discovery.
In addition to taking various articles of value, the thieves
opened certain bureau drawers in the house, in which had

been put away, wrapped in newspaper and camphor, various articles of clothing, made of woolens, such as skirts, furs, coats and other garments. The contents of the drawers were distributed throughout the room and on the beds.

As a result of this action by the thieves various garments mentioned were eaten by moths and damaged. The plaintiff had a verdict, and from the judgment entered thereon the defendant appealed.

The plaintiff, in addition to proving loss of stolen articles, also offered proof that moths damaged certain articles of clothing of the plaintiff. The defendant objected to testimony as to the damage by moths, the ground of objection being that the policy only covered direct loss and that that by the moths was not direct. The trial judge admitted the testimony and an exception was taken. The trial court also refused to charge the jury that the plaintiff was not entitled to recover for damage done by moths, as requested by the defendant, and exception was taken to such refusal.

The plaintiff-respondent relies upon the cases of *Sommer Faucet Co.* v. *Com. Cas. Ins. Co.*, 89 *N. J. L.* 693, and *Harris* v. *Am. Cas. Co.*, 83 *Id.* 641, decided in this court; but they do not apply. In Sommer Faucet Co. *v.* Com. Cas. Ins. Co. the suit was upon a policy insuring against accidents growing out of usual and necessary repairs and alterations, and the question was whether recovery could be had for injury received in connection with the reconstruction of a platform, and that, in turn, depended upon whether the reconstruction was a usual repair or alteration. There was evidence from which it could be inferred that what was done was something more than was usual or necessary, and went beyond. The Supreme Court held that whether or not something more than was usual or necessary was done depended upon extrinsic facts, as to which there was a dispute, which raised a question for the jury to determine. There the question was whether the work done came within the terms of the contract or policy. Here the question is not whether moths destroyed the articles of apparel, but whether the contract of insurance, by its terms, extended to that sort of loss. By the excerpts from the

opinion in Harris *v.* Am. Cas. Co., in the brief for respondent, it appears that that case is used to illustrate the doctrine that words contained in a policy of insurance should be construed most strongly against the insurer, where the policy is so framed as to leave room for two constructions. But in the case at bar there is no ambiguity in the pertinent language of the policy. The contract under consideration insured the plaintiff "for direct loss by burglary, theft or larceny." As to whether the indirect loss occasioned by moths ruining certain articles disturbed by the thieves, but not carried away by them, and, therefore, not stolen, is within the terms of the policy, is a question of construction, and therefore one of law for the court.

The construction and effect of a written instrument is a matter of law to be determined by the court and not by the jury; but when such construction depends upon extrinsic facts, as to which there is a dispute, a jury question is presented. *Sommer Faucet Co. v. Com. Cas. Ins. Co., supra* (at *p.* 695). See, also, *Hope v. The Maccabees, ante p.* 148.

It is to be remembered that the insurance was for *direct* loss by burglary, theft or larceny. Burglary is the breaking and entering into a mansion-house in the nighttime with intent to commit a felony. 4 *Bl. Com.* 224; *State v. Wilson,* 1 *N. J. L.* 439, 440. While the breaking open of a house wherein no man resides, and which for the time being is not a mansion-house, is not attended with the circumstances of midnight terror, nevertheless, the house wherein a man sometimes resides, and which the owner has only left for a short season *animo revertendi,* is the object of burglary, though no one be in it at the time of the fact committed. 4 *Bl. Com.* 225. Theft is defined to be a popular term for larceny. 2 *Bouv. Dict. (Rawle's rev.)* 1115. Larceny is the felonious taking and carrying away of the personal goods of another. 4 *Bl. Com.* 229. And this *animo furundi*—that is, with intent to steal. *Ibid.* 232. See, also, *Gardner v. State,* 55 *N. J. L.* 17.

Although section 131 of the crimes act (*Comp. Stat., p.* 1787) denounces as a high misdemeanor the crime of willfully

and maliciously breaking into and entering any church, meeting-house, dwelling-house, shop, &c., by night, with intent to rob, steal, kill, &c., that does not do away with the distinctive offence of burglary at common law, although it includes it. *Conners* v. *State,* 45 *N. J. L.* 340, 346.

Now, if the breaking and entering in this case amounted to a burglary, the distributing of the disturbed articles into places where moths could fasten upon them, was not, in and of itself, a felony at common law nor a misdemeanor under our statute. If the entry of the thieves were made in the nighttime, and if it were not burglary because the dwelling was unoccupied, or if the entry were made in the daytime, when it would not be burglary, still, the scattering of the goods which were not asported was neither larceny nor theft, which, as we have seen, are practically convertible terms. In no event was the displacing and disposal on the premises, of certain goods which were not stolen, direct loss by burglary, theft or larceny, so far as damage by moths is concerned, although such damage may be directly traceable to the exposing of the goods to attack by moths, which before, by reason of the packages containing them and the repositories in which they were placed, were immune from those insects. If it may be said that the damage was due at all to burglary, theft or larceny, it was certainly *indirect* and *consequential,* but *not* direct. And this because a new and independent cause intervened between the peril insured against and the damage.

The Supreme Court decided, in *Ross* v. *L. & L. & G. Ins. Co.,* 83 *N. J. L.* 340, that under a policy of fire insurance which provided that the insurer should not be liable for loss caused by an explosion unless fire ensued, and then only for the damage by fire, the insurer could not be held for loss by explosion, even though due to the ignition of a match. In other words, that where a policy insured against loss by fire resulting from an explosion, there was no liability for damage resulting from the explosion though caused by fire. The court, in its opinion, speaking by Mr. Justice Swayze (at *p.* 343), said that the policy is one insuring against loss or damage by fire, and that the construction contended for would

convert it into a policy against loss by explosion; that the fire did no damage except by reason of the explosion, and that a loss of that kind is one by explosion and not by fire, upon the principle that it is the proximate and not the remote cause that is looked at.

Because, by the admission of evidence and the charge of the trial judge, the plaintiff in the case at bar was permitted to recover for damages done by moths, which damage may have entered into the verdict of the jury, the judgment under review must be reversed, to the end that a *venire de novo* may issue.

WHITE, J. (dissenting). In *Davenport* v: *McClellan,* 88 *N. J. L.* 653, and in *Vallancy* v. *Rigillo, ante p.* 307, we held that the action of an irresponsible child, five years old, did not constitute an intervening proximate cause. I am unable to give to the natural and universally expected action of the moths in the present case, where furs were exposed to their ravages in summer time, any higher classification.

If a burglar broke into my dwelling-house to steal a valuable painting hanging on the wall, and in order to get something to stand on so he could reach it, pushed over to it a cabinet from another part of the room, without, however, first removing a handsome Sevres vase which stood upon the cabinet, and which, in consequence, by virtue of the law of gravity, fell to the floor and was broken, I do not think anyone would regard very seriously a claim that the destruction of the vase was not the direct result of the burglary, on the ground that the law of gravity was an intervening proximate cause.

It is because I find it impossible to give to the one law of nature a higher potency in this respect than to the other that I vote to affirm the judgment of the Circuit Court.

*For affirmance*—PARKER, BERGEN, KALISCH, BLACK, WHITE, WILLIAMS, JJ. 6.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, MINTURN, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 8.