Argued June 22; affirmed July 8, 1932

## NUGENT et al. *v.* UNION AUTOMOBILE INSURANCE CO.

(13 P. (2d) 343)

*Irving C. Allen,* of Portland, for appellant.

*Elisha A. Baker,* of Portland, for respondents.

CAMPBELL, J.  On March 22, 1928, the plaintiffs, then residents of Portland, Oregon, insured their automobile with the defendant company for a period of

twelve months, against actual damage and loss, for an amount not to exceed the actual cash value of the same at the time of the loss. That particular section of the policy that is pertinent to this case is as follows:

"(B) THEFT, ROBBERY OR PILFERAGE by persons excepting those in the employment, service or household of the Assured, and excepting also the wrongful conversion or secretion by a bailee or mortgager or vendee in possession under mortgage, conditional sale or lease agreement, and excepting in any case other than the theft of the entire automobile described herein, the theft, robbery, or pilferage of tools etc. * * * unless specifically endorsed hereon."

Sometime previous to February 23, 1929, plaintiffs moved to Chicago, Ill., leaving the insured automobile in Portland, Oregon, with S. D. Bowie, with authority to sell. On Saturday, February 23, 1929, in the evening, after banking hours, a person representing himself to be James Sherwood, pretended to buy said automobile for $800 and to pay for it in full by a check drawn on the United States National Bank of Portland. Thereupon the car was delivered to him together with the certificate of title thereto which had been previously endorsed in blank by plaintiffs. The said James Sherwood then drove said automobile away and converted it to his own use and plaintiffs have ever since been deprived of possession thereof. On Monday, February 25, 1929, as soon as the bank, on which the check was drawn, opened, the check was presented for payment. The bank refused payment for the reason that James Sherwood had no funds therein, nor did he ever have an account in said bank. The check was absolutely worthless. It afterwards developed that the pretended purchaser of said car was a man who made his living by thieving and swindling

and traveled under many aliases. He also confessed later that he knew that the check was worthless when issued.

Pursuant to the provisions of the said policy, the plaintiffs notified defendant, and, having complied with the other requirements of the policy as to proof of loss, etc., presented a claim to the defendant for the damages suffered by such loss, under the terms of the policy. Upon defendant's refusal to pay said claim, the plaintiffs, after waiting more than six months, filed in the circuit court of Multnomah county, on May 18, 1931, a complaint in which they alleged the above mentioned facts and prayed for judgment for the sum of $800 and reasonable attorney fees in the sum of $250 as provided by the terms of the policy.

The defendant demurred to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was over-ruled. The defendant refused to plead further, and judgment was entered in favor of the plaintiffs in the amount prayed for and attorney fees in the sum of $250 and interest on the whole amount at the rate of six per cent per annum.

Defendant appeals and assigns as error; that the court erred in overruling defendant's demurrer to plaintiffs' complaint and entering judgment for plaintiffs.

The question involved is, does such a state of facts as alleged in the complaint constitute theft, robbery, or pilferage?

The courts are not all in accord as to the meaning of those words in an insurance policy. Some of the courts hold that theft when so used is synonymous with larceny: *Downs v. New Jersey Insurance Co.*, 91 N. J.

Law 523 (103 Atl. 205, L. R. A. 1918D, 513). Others hold that theft, when so used, does not cover all forms of statutory larceny, but is intended to cover only larceny as it is commonly known and understood: *Fiske v. Niagara Fire Insurance Co.* 205 Cal. 355 (278 P. 861). Others hold that:

"The word theft in an insurance policy against loss of property by theft is a broader term than larceny, and includes any wrongful deprivation of the property of another including embezzlement and swindling." Fidelity and Casualty Co. v. Wathen, 205 Ky. 511 (266 S. W. 4, 41 A. L. R. 844).

■ Where the possession of personal property is obtained by trick or device with an intent on the part of the one obtaining possession to deprive the owner of the property and convert it to his own use, such a taking is felonious and is theft or larceny.

"The distinction between the crimes of obtaining by false pretenses and larceny, lies in the intention with which the owner parts with the property." 25 C. J. 657.

"When the property is delivered to the accused by another than the owner, the question whether the obtaining constitutes larceny or false pretenses depends not only on the intent with which such person delivers the property, but also on his authority over it. If he intends to pass the title and he has authority to do so, the obtaining with intent to convert it, is the crime of obtaining by false pretenses." 25 C. J. 657.

Under the complaint herein, the only authority that Bowie, the agent, had was to sell the automobile. The naked authority to sell means to sell property for cash and not for a worthless check. The pretending purchaser was a stranger to plaintiffs and their agent, Bowie. He had no intention of buying the machine; the taking possession of it was felonious from the beginning.

Theft is defined by Webster as: "The act of stealing, the felonious taking and removing of personal property with the intent to deprive the rightful owner of the same; larceny."

Thief is defined as: "One who steals; one who commits theft or larceny. 'A thief takes our property by stealth;' ".

Steal is defined: "1. To take, and carry away, feloniously; to take without right or leave and with intent to keep wrongfully; 3. To gain by insinuating arts or covert means."

██ The meaning of the words "theft" and "robbery," in such a policy, must be determined by the way they are used and by the meaning that would be attached to them by a person of ordinary learning and understanding; the commonly accepted meaning by the average layman. These words, having been selected by the insurer, if they are susceptible of more than one construction, are to be construed most strongly against the insurer.

"The office of the judge, is simply to ascertain * * * what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." Oregon Code 1930, 9-214.

■ The appellant asks the court to change the word in the contract from "theft" to "larceny" as defined by the statutes of the state. That would be inserting what was omitted.

"When different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made." Oregon Code 1930, 9-220.

The provision against "Theft, Robbery and Pilferage," was made in favor of respondent.

There are many instances throughout the literature of the country of the use of the word steal in a different sense to that used in the statutes defining larceny; "stolen sweets," "stolen kisses," "stolen hearts," "stolen glances," "stolen audiences," "stolen minds," and many similar uses of the word, none of which would justify an indictment for larceny.

"The terms of a writing are presumed to have been used in their primary and general acceptation * * *." Oregon Code 1930, 9-217.

The ordinary person usually depends upon a dictionary for the definition of words and generally an abridged edition of such dictionary. He knows what is meant by the words "steal" and "rob" as used in the language of the newspaper (the chief source of information of the great majority); there was no doubt in his mind what was meant when he read in his morning newspaper that the decision in a late pugilistic event was "robbery." He clearly understood what was intended when he recently read that a certain candidate "tried to steal the convention," or in the same article that a certain "wisecracker" had "stolen the show." If the ordinary individual were defining the transaction in the case at bar, he would not hesitate in declaring it "theft" or "robbery." "He who filches from me my good name, robs me of that which * * * leaves me poor indeed." There is no difficulty in understanding the meaning of the above quotation. The author thereof has never been charged with a lack of knowledge of the meaning of the English language.

A similar set of facts as alleged in the instant case is defined as larceny by the statutes of many states, Kansas, Rhode Island, Mississippi, and some others.

The state of Texas defined such a state of facts as "theft." The statutes of the state of Oregon have not defined the word "theft." The legislature of this state has given several definitions of larceny. If any person shall steal any goods or chattels, the property of another, Oregon Code 1930, 14-315; fixtures, Id. 14-318; livestock, 14-319; altering brands on animals, Id. 14-324; embezzlement by servant, Id. 14-325; by bailee, Id. 14-326, and other offenses that by their nature are more or less closely allied to larceny. There is no crime in this state designated as obtaining money or property by false pretenses.

"If any person shall, by any false pretenses or by any privity or false token, and with intent to defraud, obtain * * * from any person, any money or property whatever * * * upon conviction thereof, shall be punished by imprisonment in the penitentiary * * *." Oregon Code 1930, 14-334.

It will be observed that it gives the acts therein mentioned, no specific name, it simply declares such acts are criminal and prescribes punishment.

■ Much is claimed in the brief of the appellant that it was the intention of the plaintiffs to pass the title of the property at the time of delivery, and if title passed there could be no larceny. Before title passes under the circumstances outlined in the complaint, there must be a sale. A sale contemplates delivery by one and payment by the other; a contract made and executed; a meeting of the minds of the buyer and the seller. On what did the minds of the seller and pretended buyer meet? That the pretended buyer should get the insured automobile and that the seller would get the worthless check? There was never a meeting of the minds of the pretended buyer and the seller. The

pretended buyer at no time had any intention of paying for the automobile. The seller at no time intended to sell it for a worthless check. There being no meeting of the minds, there was no contract. There is a distinction between a conditional delivery and conditional sale.

"In the present case every circumstance tends to show that the vendor did not waive immediate payment of the price of the goods. The purchaser was a stranger to him, and there was no intent to deliver the goods upon his credit, but plaintiff expected to receive the cash upon the presentation of the check, and evidently would not have parted with the goods otherwise. The delivery was conditional, and defendant acquired no title." Johnson v. Iankovetz, 57 Or. 24 (102 P. 799, 110 P. 398, 29 L. R. A. (N. S.) 709).

The uniform sales act does not affect or change the law as laid down in the decision of *Johnson v. Iankovetz,* supra.

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend them to be transferred.

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and circumstances of the case." Oregon Code 1930, 64-402.

"Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed." Id. 64-403.

There cannot be any question in the instant case but that the plaintiffs or their agent intended that title should not pass before payment.

As we have already said, there was no unconditional, or any kind of a contract between the pretended buyer and the sellers or their agent, to sell. There was no postponement of either payment or delivery. At the time the pretended buyer got possession of the property, no contract of sale had yet been consummated.

We have carefully examined all the authorities cited by learned counsel for appellant. Many of them are on an entirely different state of facts. A careful analysis will show that they announce similar general principles of law as those announced herein.

Finding no error, the judgment will be affirmed.

It is so ordered.

BEAN, C. J., RAND and KELLY, JJ., concur.