CENTRAL SURETY FIRE CORPORATION *v.* WILLIAMS.

4-8550                                             211 S. W. 2d 891

Opinion delivered June 7, 1948.

*Buzbee, Harrison & Wright,* for appellant.

*Huie & Huie,* for appellee.

ED. F. McFADDIN, Justice.   The extent of coverage of the insurance policy is the question presented.

On November 7, 1946, appellant issued a policy which protected appellee Williams to the extent of $1,750 against the loss of his Chrysler automobile by "theft, larceny, robbery or pilferage"; and the policy was in force at all times hereinafter mentioned.   On December 26, 1946, a man calling himself George F. Martin approached Williams, seeking to buy the Chrysler automobile.   The conversations began about 1:30 p. m.   About 3:30 p. m. (which was after banking hours), Martin agreed to pay Williams $2,875 for the car, and offered a check drawn by Martin on the Kansas City Trust Company of Kansas City, Missouri.   Martin suggested that

Williams call a party in Pine Bluff for references. When the Pine Bluff party recommended Martin for credit, Williams took Martin's said check, and delivered the car to Martin along with a bill of sale. The recommendation by the Pine Bluff person proved to have been an honest mistake, but—in reliance on such recommendation—Williams took the check, and parted with his car and the title thereto. The check was returned by the Kansas City bank, with the notation that Martin had no account. The Federal Bureau of Investigation was looking for Martin, and Williams joined in the search. Martin was apprehended, minus the automobile, in Las Vegas, Nevada. Williams appeared before a grand jury in Kansas City, Missouri, in its investigation of Martin, who was an ex-convict.

As soon as the check was returned, worthless, Williams notified the appellant insurance company, and made claim for $1,750, on the theory that he had lost his car by ''theft, larceny, robbery or pilferage.'' Appellant resisted the claim, and this suit resulted. The chancery court, in decreeing recovery for Williams, found:

'' . . . That the automobile of Ralph Williams . . . was taken from him by a swindler operating through a preconceived plan to defraud the plaintiff Ralph Williams; which the court finds to be larceny under the statutes of Arkansas and within the meaning of the policy; . . . ''

This appeal challenges the chancery decree.

We conclude that the chancery court decree is correct; and here is the reasoning which impels such conclusion.

I. *The Crime by Which Martin Obtained the Car.* Appellant argues (a) that Martin was not guilty of larceny, but was guilty of false pretense (§ 3073, Pope's Digest); and (b) that the insurance policy does not protect Williams against false pretenses, but only against ''larceny, theft, robbery and pilferage.'' Appellant contends that, when an owner voluntarily parts with both

possession and title, the person thus obtaining the property is guilty of false pretenses and not larceny, and appellant cites these cases: *Parker* v. *State*, 98 Ark. 575, 137 S. W. 253; *Lawson* v. *State*, 120 Ark. 337, 179 S. W. 818; *Higgins* v. *State*, 141 Ark. 633, 217 S. W. 809; *Fisher* v. *State*, 161 Ark. 586, 256 S. W. 858; *Arkansas National Bank* v. *Johnson*, 122 Ark. 1, 182 S. W. 523; and *Morgan* v. *State*, 169 Ark. 579, 275 S. W. 918.

We are convinced that Martin's entire dealings with Williams were part of a preconceived plan and were fraudulent in their inception. In short, Martin started out to swindle Williams of his car, and used the check on the Kansas City bank as a part of the scheme. Even if Martin was guilty only of false pretense, still—under our statute—such false pretense is deemed to be larceny. Our statute (§ 3073, Pope's Digest) reads:

"Every person who, with intent to defraud or cheat another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain a signature of any person to any written instrument, or obtain from any person any money, personal property, right of action, or other valuable thing or effects whatever, upon conviction thereof shall be deemed [1] guilty of larceny and punished accordingly."

One guilty of the statutory crime of false pretense is deemed—or adjudged—"guilty of larceny and punished accordingly." By the plain wording of our false pretense statute, the person guilty of its violation is adjudged guilty of *larceny*. The wording of our statute brings the act of Martin within the policy coverage of the insurance company, *i. e.,* larceny.

II. *Cases from Other Jurisdictions.* We have no case in our reports with facts directly in point with those in this case; so counsel on both sides in their zeal have furnished us excellent briefs listing and discussing cases

---

[1] "Deemed" means "adjudged." See 18 C. J. 450.

from other jurisdictions as persuasive to a decision here.[2] We briefly review the cited cases and authorities.

A. *Cases and Authorities Cited by Appellee.* We mention only four cases and two texts.

1. In *Nugent* v. *Union Automobile Insurance Co.,* 140 Ore. 61, 13 Pac. 2d 343, Nugent held a policy of insurance which protected him against "theft, robbery or pilferage" of his automobile. Possession of and title to the car were delivered to a professional swindler on a check which was bad. Nugent sued the insurance company for theft of his car, and liability was denied. The question was, whether such a state of facts as previously mentioned constituted "theft, robbery or pilferage." The Supreme Court of Oregon answered the question in the affirmative; and we observe that a much stronger case for recovery exists in the case at bar, for here the coverage is against "theft, *larceny,* robbery or pilferage."

2. In *Champion* v. *Chicago Fire & Marine Ins. Co.,* 140 N. J. L. 554, 141 Atl. 794, the plaintiff's automobile, was insured against "theft, robbery or pilferage." An alleged purchaser obtained possession of the car by delivering a check for $500, which check later proved worthless. The plaintiff filed claim against the insurance company under the above policy; liability was denied. The Court of Errors and Appeals of New Jersey awarded recovery against the insurance company, saying:

"In *Gardner* v. *State,* 55 N. J. Law 27, 26 A. 30, cited and approved here in *Downs* v. *N. J. Fidelity & Plate Glass Co.,* 91 N. J. Law 523, 103 A. 205, L. R. A. 1918D, 513, Mr. Justice Depue, speaking for the Supreme Court, defined the common-law crime of larceny as the equivalent of the generic offense of stealing, and, quite manifestly, the ingenious device resorted to in this instance must comport with that definition, which in effect com-

---

[2] There are annotations in American Law Reports on the general subject here involved. These annotations may be found in 14 A. L. R. 215, 19 A. L. R. 171, 24 A. L. R. 740, 30 A. L. R. 662, 38 A. L. R. 1123, 46 A. L. R. 534, 89 A. L. R. 465, 109 A. L. R. 1080, 133 A. L. R. 920, and 152 A. L. R. 1100.

prehends the popular conception of theft. 2 Bouv. Law Dict. 1115.''

3. In *Gaudy* v. *North Carolina Home Ins. Co.*, 145 Wash. 375, 260 Pac. 257, the plaintiff's automobile was claimed to have been insured against ''theft, robbery or pilferage.'' Possession of and title to the car were obtained by a swindler on a check which proved worthless, and a claim was filed against the insurance company. The case turned on the effective date of the insurance policy, but in commenting on liability—if the policy had been in force—the Supreme Court of Washington quoted § 2601 of Remington's Compiled Statutes of that state, reading in part:

'' 'Every person who, with intent to deprive or defraud the owner thereof . . . (2) Shall obtain from the owner or another the possession of or title to any property, real or personal , . . . by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune telling, . . . steals such property and shall be guilty of larceny.' ''

The court then said: ''It seems to us the transaction comes directly within the provisions of this statute.''

It will be observed that the Washington statute, as above quoted, makes a person convicted of false pretense, guilty of larceny. As previously noted, that is the way the Arkansas statute reads, and the Washington case is persuasive to our holding here.

4. In *Hill-Howard Motor Co.* v. *North River Ins. Co.*, 111 Kan. 225, 207 Pac. 205, 24 A. L. R. 736, the plaintiff held a policy of insurance which protected his automobile against ''theft, robbery or pilferage.'' He delivered the possession of and title to his automobile to a swindler who operated by means of a preconceived plan. The plaintiff filed claim against the insurance company for loss of his car. The Supreme Court of Kansas, in sustaining a recovery, said:

''The prevailing rule is that any scheme, whether involving false pretenses or other fraudulent trick or de-

vice, whereby an owner of property is swindled out of it with the preconceived intent of the swindler not to pay for it, is classed as larceny, and is punished accordingly. Here the swindler planned to fraudulently get possession of the plaintiff's property with intent to deprive him of it without his consent.

. . . . .

"Under these circumstances, the plaintiff was deprived of his property by a species of 'theft,' and such an offense is generally so defined."

We again observe that a much stronger case for recovery exists in the case at bar where the coverage includes *larceny* in addition to theft, robbery or pilferage.

5. In addition to the cases there are certain texts that state the general rule in a case such as this one. We quote from these. In Appleman on Insurance Law and Practice, § 3212, in discussing loss of vehicles through conversion by a purchaser, the text reads:

"Where the car is lost to a swindler, operating through a preconceived plan, this amounts to a theft under the terms and provisions of the policy. Thus where one fraudulently represents himself to be a prospective purchaser, this result would follow, such as where a worthless check is given for the acquisition cost."

And, in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, § 3712 reads: "So the act of a swindler, who by means of a preconceived plan which involves impersonation, misrepresentation, and fraud, deprives the insured of the possession of an automobile, the insurer retaining title to it, is larceny by trick, and theft within the meaning of the policy."

B. *Cases Cited by the Appellant.* We list and discuss all six of the cases cited by the appellant.

1. In *Royal Ins. Co.* v. *Jack,* 113 Ohio St. 153, 148 N. E. 923, 46 A. L. R. 529, an automobile was delivered to a swindler on the false pretense that a check was certified, when—in truth—the check was bad. The policy of

insurance was a coverage against "theft, robbery, or pilferage." The Supreme Court of Ohio, in denying recovery to the plaintiff, held that the automobile was not obtained from the owner by either theft or larceny, but was obtained by false pretense only. But the Ohio false pretense statute does not read as does our statute. The Ohio statute (§ 13104, Ohio Penal Code) reads: "Whoever, by false pretense and with intent to defraud, obtains anything of value . . . if the value of the property . . . so procured . . . is $35 or more, shall be imprisoned in the penitentiary . . . or if less than that sum shall be fined . . ."

In other words, the Ohio statute on false pretense prescribes its own penalty and does not conclude, as does our statute, with the expression "shall be deemed guilty of larceny"; and this difference in the wording clearly distinguishes the Ohio case from the case at bar.

2. In *Illinois Automobile Ins. Exchange* v. *Southern Motors Sales Co.*, 207 Ala. 265, 92 So. 429, 24 A. L. R. 734, the owner parted with possession and title to his car because of false pretense, and sought to recover from the insurance company under a policy which contained a coverage against "theft, robbery or pilferage." The Supreme Court of Alabama, in denying recovery, held that there was no theft or larceny, but only a false pretense. But the Alabama court used this language: " . . . the doctrine is well established that, where the owner intends to transfer not the possession merely, but also the title to the property, although induced thereto by the fraud or fraudulent pretenses of the taker, the taking and carrying away do not constitute theft or larceny."

The above-quoted language indicates that Alabama does not have a false pretense statute similar to our statute; so the Alabama case affords the appellant no support.

3. In *Cedar Rapids National Bank* v. *Am. Surety Co.*, 197 Iowa 878, 195 N. W. 253, an automobile was not involved. Rather, a check was cashed by a bank under circumstances that amounted to false pretense. The bank

sought to hold the insurance company liable under a policy that protected the bank against "theft." The Supreme Court of Iowa, in denying recovery, held there was no theft, but only false pretense. But the Iowa statute on false pretense (§ 5041, Iowa Code of 1897) is similar to the Ohio statute previously quoted, and is entirely dissimilar from our false pretense statute.

4. In *Van Vechten* v. *Am. Eagle Fire Ins. Co.*, 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115, a garageman appropriated a car left in his care, and the owner sought to recover from the insurance company on a policy that covered "theft, robbery or pilferage." The New York Court of Appeals, in denying recovery, held there was no theft, saying: "Theft under this contract is theft as common thought and common speech would now imagine and describe it."

But this cited case from New York is considerably weakened by the subsequent opinion of the same court in *Block* v. *Standard Ins. Co.*, 292 N. Y. 270, 54 N. E. 2d 821, 152 A. L. R. 1097, in which the coverage was against "theft (broad form), loss of or damage to the automobile caused by larceny, robbery or pilferage." In sustaining recovery against the insurance company in the Block case, the New York court said:

"The policy in the Van Vechten case was apparently not the present form of 'comprehensive' policy. Here the insurance company has insured against theft in its 'Broad Form' and has defined it, not as theft, robbery or pilferage but as 'Larceny, Robbery or Pilferage.' The defendant wrote the policy and chose the words used. We must give effect to the word 'comprehensive' and the definition of theft. To do so is to fasten liability upon the defendant. The average automobile owner knows that the taking of an automobile in manner such as was done here constituted the crime of larceny. His legislative representative voted for that enactment. The newspaper he reads contains reports of unauthorized temporary appropriations of automobiles and both he and the newspapers now use the word joy-ride as a definition of such an act. Such act is larceny and is so considered by

the average man whether or not he is the owner of an automobile. Such is the ordinary meaning which 'the average policyholder of ordinary intelligence, as well as the insurer, would attach to it.' *Abrams* v. *Great American Ins. Co.*, 269 N. Y. 90, 199 N. E. 15.''

5. In *Aetna Casualty & Surety Co.* v. *Salyers*, 294 Ky. 826, 172 S. W. 2d 635, a car was entrusted or rented to a person who absconded. It was claimed that he was a thief, and recovery was sought from the insurance company. But the Kentucky Court of Appeals, in denying recovery, pointed out that there was excepted from the coverage ''loss or damage due to: wrongful conversion, embezzlement . . . while rented under contract or lease.''. The court held the absconder was an embezzler, and not a thief. In the case at bar the entire policy is not before us. There is only the stipulation that the coverage was against ''theft, larceny, robbery or pilferage.'' It is not claimed that there is any exception from such coverage; so the Kentucky case is not in point.

6. In *Laird* v. *Employers' Liability Corp.*, 2 Terry (Del.) 216, 18 Atl. 2d 861, no automobile was involved. The facts showed that certain stock certificates were obtained by plaintiffs by false pretenses. The plaintiffs sued the defendant on an insurance policy which protected them against loss arising from the securities being ''stolen.'' The Superior Court of Delaware said of the method employed in obtaining the securities: ''It is a fraud, of course, but it is not stealing. . . . In the contract or indemnity in question the word 'stolen' is not qualified by the context, and it must be given its usual and ordinary meaning. The loss did not result from larceny or theft, but through a distinct species of fraud; . . .''

There was no showing that Delaware had a statute on false pretense reading as does our false pretense statute; so the Delaware case affords the appellant no support.

*Conclusion*: After reviewing the authorities from the other states, we conclude that our own statute (§ 3073,

Pope's Digest) is conclusive of the question here at issue, because the swindler obtained Williams' car by false pretense, and one guilty of false pretense "shall be deemed guilty of larceny." We therefore affirm the decree of the chancery court.

The Chief Justice dissents.