MASSACHUSETTS FIRE & MARINE INSURANCE COMPANY *v.* CAGLE.

4-8640                                214 S. W. 2d 909

Opinion delivered November 22, 1948.

*John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellant.

*J. H. Lookadoo* and *McMillan & McMillan,* for appellee.

Robins, J. Sole question presented by this appeal is whether a policy of insurance issued by appellant to appellees covered loss suffered by appellees by reason of a swindle, perpetrated on appellee Cagle, by which Cagle lost a 1946 Ford Tudor Sedan. Appellees sought judgment against appellant on the ground that the transaction between appellee Cagle and one George S. English (alias Yeargan), under which the car was obtained from Cagle by English (or Yeargan), amounted to a theft. The defense of appellant was that the language of the policy excluded liability for the loss.

The lower court sitting as a jury found the issues in favor of appellees and rendered judgment in their favor for the amount demanded. This appeal ensued.

The case was tried in the lower court on an agreed statement of facts. The insurance policy included a coverage known as "comprehensive," and covered any loss of insured as to the automobile, except damage by collision. Theft was one of the losses mentioned as being covered.

The policy, however, contained this provision which forms the basis of appellant's contention that it is not liable: "This policy does not apply: . . . (b) under any of the coverages, while the automobile is subject to any bailment, lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy; . . . (g) under coverages A and D, to loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment, lease, conditional sale, mortgage or other encumbrance."

Appellee Cagle, a dealer in Arkadelphia, had for sale on a used car lot in Arkadelphia the Ford car herein involved. About 4:30 p. m. on July 12, 1947, Greely Hurst, a resident of that city and personally known to Cagle, came upon the lot accompanied by a man introduced to Cagle by Hurst as his son-in-law, who desired to purchase the Ford automobile. After some negotia-

tions an agreement for sale of the Ford car at the sum of $1,650 was made. The purchaser represented himself to be George S. English, an employee of a real estate company in Little Rock. He showed Cagle cards and papers indicating that he was such employee and that he was under $10,000 bond to his employer. He also exhibited to Cagle a passbook of a Little Rock bank showing that on that very day he had made a deposit of $9,000 in the bank. The bank book showed no other deposit. After examining the credentials and passbook Cagle accepted from ''English'' a check for $1,650 drawn on the Little Rock bank which had issued the passbook and turned the automobile over to ''English''. Cagle would not deliver bill of sale for the car then, but attached it to the check, which was to go through the Merchants & Planters Bank & Trust Company for collection, and it was agreed that the title should not pass until the check was cleared. ''English'' had stated to Cagle he was in Arkadelphia to visit his father-in-law and would stay for some time. Although it was after banking hours when the transaction occurred Cagle succeeded in getting in the bank and had it forward the check for collection so as to reach the drawee bank at Little Rock on Monday, July 14th. On July 15th the check was returned marked ''insufficient funds''.

It developed that no George S. English had made a $9,000 deposit in the drawee bank, but some one had deposited in that name $100 in cash and check for $800, which never was paid, so that in fact there was never actually more than $100 on deposit in the name of ''English'' in the bank on which the check for $1,650 in favor of appellee Cagle had been drawn.

Investigation showed that the man who obtained the car from Cagle was not ''George S. English'', but was George F. Yeargan, that he was the son-in-law of Hurst, who had introduced him, and that Yeargan and his wife had on the same day sold a used car dealer in Arkadelphia an automobile which they represented to be free of encumbrances, but which in fact had an outstanding title note against it. The man who bought Yeargan's car gave him a check for the purchase price drawn on the

Elkhorn Bank & Trust Company of Arkadelphia. When that bank opened on the morning of Monday, July 14th. Mrs. Yeargan was there and obtained payment of this check. Yeargan was driving the Ford automobile obtained from Cagle and immediately after his wife collected the check they left Arkadelphia in Cagle's car. At Prescott they succeeded in getting a car dealer to prepare for them a bill of sale by which Mrs. Yeargan pretended to sell the Ford automobile to her husband, but other assumed names were used in this transaction. With this bill of sale they obtained from the Revenue Department at Prescott new license plates. The Yeargans thereupon departed and have not been heard from since.

The agreed statement of facts contains this recital: "It is admitted that Yeargan at the time he purchased the aforementioned Ford car from Wayne Cagle knew that his check delivered to Cagle was worthless and would not be paid, and that he delivered said check for the purpose of *wrongfully* obtaining possession of said automobile." (Italics supplied).

The argument of appellant is that this case is clearly distinguishable from the case of *Central Surety Fire Corporation* v. *Williams,* 213 Ark. 600, 211 S. W. 2d 891. In that case we held the insurance company liable under a policy insuring against loss by theft where the evidence showed that the car was purchased by use of a worthless check. Appellant urges that in the policy sued on herein there was an exclusion (not shown to be in the policy involved in the Williams case) of any loss caused by conversion, embezzlement or secretion of any automobile by any person in lawful possession by bailment, lease or conditional sale, and that the transaction involved herein was in reality a conditional sale.

But under the agreed statement of facts it was stipulated that when Yeargan bought the car from Cagle he knew that his check to Cagle was worthless and would not be paid and "that he delivered said check for the purpose of *wrongfully* obtaining possession of said automobile". (Italics supplied). It was also shown that Yeargan misrepresented his employment and his identity,

and exhibited a bank passbook in which the figures had been materially altered. So, under the facts in the case at bar Yeargan came into possession of the insured automobile wrongfully. There was never actually any sale of the car because Yeargan's fraud vitiated the entire transaction. His possession of the automobile was never at any time rightful or lawful, but was obtained by fraudulent trickery; and, under the plain language of our statute (§ 3073, Pope's Digest), his act in so obtaining possession of the car was larceny. In Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, § 3712, this general rule is laid down: "So the act of a swindler, who by means of a preconceived plan which involves impersonation, misrepresentation, and fraud, deprives the insured of the possession of an automobile, the insured retaining title to it, is larceny by trick, and theft within the meaning of the policy." See, also, *Hill* v. *North River Insurance Company,* 111 Kan. 225, 207 Pac. 205, 24 A. L. R. 736; *Nugent* v. *Union Automobile Insurance Company,* 13 Pac. 2d 343, 140 Ore. 61; and *Granger* v. *New Jersey Insurance Co.,* 108 Calif. App. 290, 291 Pac. 698.

The lower court correctly interpreted the policy sued on and the judgment appealed from is, therefore, affirmed.

The Chief Justice concurs.

GRIFFIN SMITH, Chief Justice, concurring. In *Central Surety Fire Corporation* v. *Williams* I dissented on the ground, not then expressed, that the plaintiff easily had it within his power to prevent the swindle, hence only a business casualty—made possible by negligence—was involved. Neither the plaintiff nor the defendant in that case *contracted* with the idea that because the Legislature, in fixing the punishment for false pretense took larceny as the *measure,* a fraudulent business transaction would find compensation in an insurance policy covering larceny, such as the plaintiff there relied upon.

The same situation exists in the case now being disposed of. However, under the rule announced for Williams, and in view of the stipulation that Yeargan de-

livered the check for the purpose of "wrongfully obtaining possession", Cagle finds a haven of protection. The Court's construction appears to be that the larceny occurred when possession was surrendered, and not when the physical act of asportation took place.