NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1041
_____

QUIMERA HOLDING GROUP SAC

v.

KENNEDY FUNDING FINANCIAL LLC;
KEVIN WOLFER; GREGG WOLFER

KENNEDY FUNDING FINANCIAL, LLC.,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:20-cv-17764)
District Judge:  Honorable Madeline C. Arleo
_____

Argued November 13, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*.

(Opinion filed: February 13, 2025)

Craig S. Hilliard **[ARGUED]**
Stark & Stark
100 American Metro Boulevard
Hamilton, NJ 08619
    *Counsel for Appellant*

Ahmed A. Massoud **[ARGUED]**
Massoud & Pashkoff
950 Third Avenue, Suite 901
New York, NY 10022
    *Counsel for Appellee*

———————————

OPINION*

———————————

MONTGOMERY-REEVES, *Circuit Judge*.

Appellant Kennedy Funding Financial LLC ("Kennedy") executed an agreement

to issue Appellee Quimera Holding Group SAC ("Quimera") a loan in the amount of

55% the value of certain collateral. But the agreement failed to identify the collateral.

No loan ever issued, and Quimera sued Kennedy for breach of contract.

Following cross motions for summary judgment, the District Court granted

summary judgment for Quimera and denied Kennedy's subsequent motion for

reconsideration. The District Court found that Quimera retained the right under the

agreement to identify the collateral for the loan and held that Kennedy breached by

failing to oblige Quimera's preference. We disagree. Applying New Jersey law, we find

a genuine dispute of material fact as to what collateral the parties agreed to use for the

loan. We therefore vacate the District Court's orders and remand for further proceedings.

I.       BACKGROUND

On November 1, 2017, Kennedy and Quimera met (the "November 1 Meeting")

and executed a loan agreement (the "Loan Commitment"). Kennedy agreed to issue

Quimera a loan for 55% the appraised as-is market value of collateral, with a minimum

loan of $3,000,000 and a maximum loan of $50,000,000. The Loan Commitment

————————————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

required Quimera—within three days of receiving a loan offer—to accept the offer, reject the offer, or initiate a third-party appraisal of the collateral. The Loan Commitment defined collateral "as described in 'Schedule C.'" App. 114. But although the parties discussed a complete list of Quimera's properties at the November 1 Meeting, Schedule C did not identify any properties.

Also at the November 1 Meeting, Quimera requested that Kennedy select properties to use as collateral for the loan from the list of Quimera's properties. Kennedy then asked Quimera to identify the properties it wished to use as collateral. Quimera emailed its preferred collateral list on November 12 (the "November 12 List"), identifying eight properties.

On December 7, Kennedy sent Quimera a list of nine properties—five of which were on Quimera's November 12 List—to serve as collateral. On December 27, Quimera paid $85,000 to Kennedy to appraise those nine properties. On January 23, 2018, Kennedy offered Quimera a loan for $32,600,000 (the "January 23 Loan Offer") based on the nine properties appraised.

On January 29, Quimera responded to the offer. Following a back-and-forth, Quimera asked Kennedy to remove five properties from the January 23 Loan Offer. Kennedy agreed and offered a loan for $23,000,000 based on the remaining collateral, but that figure fell below 55% of the value of the collateral.

Discussions faltered; Kennedy and Quimera parted ways without closing a loan; and Kennedy refused to return fees paid by Quimera under the Loan Commitment.

In 2020, Quimera sued Kennedy in the District Court and alleged, among other things, that Kennedy breached the Loan Commitment.[1]  After discovery, both parties moved for summary judgment, each arguing that the other caused the Loan Commitment to falter.

The District Court held that Quimera's request for the removal of collateral complied with the Loan Commitment and that Kennedy's below-value offer in response operated as a breach.  The District Court entered judgment for Quimera.  Kennedy moved for reconsideration, which the District Court denied.  Kennedy appealed.

## II.    DISCUSSION[2]

Our review of an order on summary judgment "is plenary, meaning we review anew the District Court's summary judgment decisions, applying the same standard it must apply."  *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021).[3]

---

[1]  Quimera also included causes of action for fraud, negligent misrepresentation, unjust enrichment, breach of the covenant of good faith and fair dealing, and a violation of the New Jersey Consumer Fraud Act.  Quimera brought each cause of action against Kennedy.  But it also named Kennedy's principals, Gregg Wolfer and Kevin Wolfer (the "Wolfers"), as Defendants to the fraud, negligent misrepresentation, and New Jersey Consumer Fraud Act claims.

[2]  The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.

[3]  Quimera argues that Kennedy forfeited any argument that genuine disputes of material fact preclude summary judgment by instead cross-moving for summary judgment.  Not so.  A "losing party" to a cross motion for summary judgment does not "waive[] judicial consideration and determination [of] whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).  And because we vacate the underlying order on summary judgment based on the record before the District Court,

4

Quimera "as the moving party must show 'that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law.'" *Id.* at 229–30 (alteration in original) (quoting Fed. R. Civ. P. 56(a)).[4] Moreover, "we must view the facts in the light most favorable to the non-moving party." *Smith v. Mensinger*, 293 F.3d 641, 647 (3d Cir. 2002) (citing *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)).

No one disputes that New Jersey law applies. Under New Jersey law, extrinsic evidence "is always admissible in aid of the interpretation of an integrated agreement . . . even when the contract on its face is free from ambiguity." *Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953). Thus, "[w]e consider all of the relevant evidence that will assist in determining the intent and meaning of the contract[,]" and "the words of the contract alone will not always control." *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 346, 347 (N.J. 2006).

Viewing the facts in the light most favorable to Kennedy and in light of the fact that Schedule C to the Loan Commitment fails to specify collateral, a reasonable jury could find based on all the relevant evidence that the parties agreed to use the nine properties appraised for Kennedy's January 23 Loan Offer as collateral. A reasonable jury could reach this conclusion by relying on: (1) Quimera's initial request that Kennedy

---

"[w]e need not reach a decision on the motion for reconsideration as it is moot." *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 197 (3d Cir. 2022).

[4] Kennedy appeals only the District Court's order granting Quimera's motion for summary judgment, not the District Court's order denying Kennedy's motion for summary judgment.

5

select properties for collateral; (2) Quimera's payment of appraisal fees for the nine properties Kennedy selected; and (3) Quimera's failure to object to the inclusion of the identified properties until after the appraisal, offer, and three-day response period. If a jury reached this conclusion, Kennedy could defeat Quimera's breach-of-contract claim because the jury would find that Kennedy fulfilled its obligation under the Loan Commitment to offer a loan for 55% the value of appraised collateral.[5]

True, "[t]he construction and effect of a written instrument is a matter of law to be determined by the court and not by the jury; but when such construction depends upon extrinsic facts, as to which there is a dispute, a jury question is presented." *Spinelli v. Golda*, 77 A.2d 233, 239 (N.J. 1950) (quoting *Downs v. N.J. Fid. & Plate Glass Ins. Co. of Newark*, 103 A. 205, 206 (N.J. 1918)). Because what collateral the parties agreed to use under the Loan Commitment presents a genuine dispute of material fact on which the ultimate breach analysis turns, we will vacate the District Court's order on summary judgment and remand for further proceedings.[6]

---

[5] We recognize that there is evidence to support Quimera's view, but that is why summary judgment is inappropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (explaining that summary judgment "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party").

[6] Quimera withdrew its unjust-enrichment claim following Kennedy's motion for summary judgment. And Quimera agreed to dismiss the remaining claims against Kennedy and the Wolfers if the District Court granted judgment in its favor on the breach-of-contract claim against Kennedy. Because the District Court did so, it dismissed Quimera's remaining claims. Kennedy does not dispute that Quimera's dismissed claims—including fraud, negligent misrepresentation, breach of the covenant

## III. CONCLUSION

For these reasons, we will vacate the District Court's orders granting Quimera's motion for summary judgment and denying Kennedy's motion for reconsideration; and we will remand for further proceedings consistent with this opinion.

---

of good faith and fair dealing, and a violation of the New Jersey Consumer Fraud Act—may be revived upon remand to the District Court.